AUGUSTINE P. SHEEHY *vs.* LIPTON INDUSTRIES, INC.,
& another.[1]

Middlesex.    March 19, 1987. — May 20, 1987.

Present: GREANEY, C.J., CUTTER, & SMITH, JJ.

*Nuisance. Real Property*, Sale. *Contract*, Sale of real estate. *Broker*, Deceit.
*Fraud. Agency*, Scope of authority or employment. *Practice, Civil,*
Summary judgment. *Consumer Protection Act*, Unfair act or practice,
Availability of remedy. *Massachusetts Oil and Hazardous Material Re-
lease Prevention Act. Damages*, Hazardous waste contamination.

On a claim by the buyer of a parcel of industrial land seeking to recover
    damages from the sellers of the land for the creation of a private nuisance
    arising from the presence of hazardous material on the property, summary
    judgment was appropriately entered for the sellers. [191-192]
In an action by the purchaser of land under an "as is" agreement, seeking
    recovery of damages stemming from the presence of hazardous material
    on the property from the seller of the land and the real estate brokerage
    company involved in the sale, summary judgment should not have been
    entered in favor of the defendants on the plaintiff's claims for misrep-
    resentation arising from a broker's statement, "Don't worry about it,"
    made in direct response to a question by the plaintiff about the possible
    presence of hazardous material on the property, where the broker's
    statement could not be held, as matter of law, to be incomprehensibly
    ambiguous or mere seller's talk, where there were issues to be decided
    on the scope of the broker's authority, and where the materials in the
    record created a triable issue on the question of the plaintiff's reliance
    on the broker's statement. [192-194]
In an action by the purchaser of land under an "as is" agreement, seeking
    recovery of damages stemming from the presence of hazardous material
    on the property from the seller of the land and the real estate brokerage
    company involved in the sale, summary judgment should not have been
    entered in favor of the defendants on the plaintiff's claims pursuant to
    G. L. c. 93A, §§ 2 (*a*) and 11, and 940 Code Mass. Regs. § 3.16 (2)
    (1978), extending liability under c. 93A to cases of nondisclosure of a
    material fact, where the materials before the judge presented genuine
    triable issues as to alleged misrepresentation by the defendants, the
    knowledge and motives of the parties, and liability under c. 93A for
    pure nondisclosure in a case involving sophisticated businessmen and
    an "as is" agreement such as the one here. [194-196]

────────────────
[1] Algonquin, Inc.

In an action by the purchaser of land under an "as is" agreement, seeking recovery of damages stemming from the presence of hazardous material on the property from the seller of the land and the real estate brokerage company involved in the sale, summary judgment should not have been entered in favor of the seller on the plaintiff's claim pursuant to G. L. c. 21E, the Massachusetts Oil and Hazardous Material Release Prevention Act, where the materials before the judge created a triable issue on the question of liability for costs of cleanup under c. 21E. [197]

This court held that an individual who had purchased land which had been contaminated by the presence of hazardous material did not, under Massachusetts law, have to wait until the Department of Environmental Quality Engineering had approved correction of the problem or sought damages before asserting a private cause of action against the seller under G. L. c. 21E, the Massachusetts Oil and Hazardous Material Release Prevention Act, "for reimbursement . . . for the reasonable costs of . . . assessment, containment and removal." [197-198]

CIVIL ACTION commenced in the Superior Court Department on July 30, 1982.

The case was heard by *Joseph S. Mitchell, Jr.*, J., on motions for summary judgment.

*James F. Freeley, Jr.*, for the plaintiff.
*James D. St. Clair* for Lipton Industries, Inc.
*Donald L. Conn, Jr.*, for Algonquin, Inc.

GREANEY, C.J.  The plaintiff's second amended complaint sets forth ten claims in separate counts and seeks to recover damages stemming from the presence of hazardous material on his property in Woburn. Named as defendants are Lipton Industries, Inc. (Lipton), the seller of the property, and Algonquin, Inc. (Algonquin), the real estate brokerage company involved in the sale. A judge of the Superior Court allowed the defendants' motions for summary judgment as to all ten counts and entered a separate judgment for each defendant. We hold that summary judgment was improper on four of the six counts against Lipton and two of the four counts against Algonquin.

The record made in connection with the summary judgment proceedings discloses the following. Early in 1979, a real estate broker from Algonquin made contact with the plaintiff, a businessman and licensed real estate broker, about the purchase

of approximately sixty acres of industrial land in Woburn. Lipton, the owner of the land since 1977, had recently closed a cat-food manufacturing plant on the premises. The plaintiff decided to buy the property and made an offer of $1.6 million, contingent upon financing and upon lease commitments. Several months later, Lipton made a counter offer. In the counter offer, the price was dropped to $1.1 million and three changes were proposed: first, the buildings on the property were to be transferred in "as is" condition, second, the sale was not to be contingent on the plaintiff's obtaining financing, and, third, the leasing contingency was to be dropped. The plaintiff agreed to these terms, a purchase and sale agreement was signed, and the transaction was ultimately closed.

Before the sale, possible contamination of the land by hazardous material became an issue. Contamination by hazardous material had become acknowledged in certain areas of Woburn and had been widely reported by the news media as prevalent in those areas. It was also well known that serous contamination existed on one site adjacent to the plaintiff's property upon which a tannery and glue-making business and a chemical company had been operated. Litigation over those conditions had occurred and was also well known. According to the plaintiff, the hazardous material problem in Woburn had been brought to his attention before the sale by a series of newspaper articles and, by his own encounter with a very sweet unpleasant odor in the area. Since he had smelled such an odor on the Lipton property, the plaintiff inquired directly of Algonquin's broker whether Lipton's property had any potential problem with hazardous material. The broker told him, "Don't worry about it." Based on that representation, the plaintiff concluded that the property on which he was about to make an offer was free of hazardous material, and the sale went ahead.

After the sale, the plaintiff applied for a building permit and was told that hazardous material existed on the property. He retained an expert firm to study the problem. The firm reported to him that a mixture of animal wastes and poisonous substances (lead, arsenic, chromium and various volatile organic compounds) contaminated two portions of the property. On March

22, 1983, the plaintiff received notice from the Executive Office of Environmental Affairs (EOEA) that preparation of an environmental impact report would be necessary before the property could be considered for industrial development. As the notice indicated, "[t]he creation of a 60 acre industrial park on a parcel known to contain hazardous waste and other waste materials and abutting one of the top 20 hazardous waste sites in the country has the potential for significant environmental impact." The plaintiff had been advised that the development of the property would require containment or removal of the hazardous material under supervision by the staff of the Department of Environmental Quality Engineering (DEQE).[2] This lawsuit followed against Lipton and Algonquin.

1. *Nuisance.* The plaintiff's first count seeks damages from Lipton for the creation of a private nuisance. The plaintiff bases this claim principally on the provisions of Restatement (Second) of Torts § 373 (1965), set forth in the margin.[3] These provisions do not help the plaintiff. The liability discussed therein concerns a physical condition created by a vendor which causes harm to "others outside of the land." The provisions do not support an action by a vendee against his vendor. See Restatement (Second) of Torts § 373, illustration 1 (1965);

---

[2] Lipton admitted that it had received information about the discovery of animal hides and the presence of foul odors "in the general vicinity" of the property in 1977. There is some indication in the record that at least one neighbor, who owned or controlled part or all of adjoining property which has substantial problems with hazardous material, may have arranged for the dumping, openly or covertly, of toxic substances on parts of Lipton's land.

[3] "(1) A vendor of land who has created or negligently permitted to remain on the land a structure or other artificial condition which involves an unreasonable risk of harm to others outside of the land, because of its plan, construction, location, disrepair, or otherwise, is subject to liability to such persons for physical harm caused by the condition after his vendee has taken possession of the land.

"(2) If the vendor has created the condition, or has actively concealed it from the vendee, the liability stated in Subsection (1) continues until the vendee discovers it and has reasonable opportunity to take effective precautions against it. Otherwise the liability continues only until the vendee has had reasonable opportunity to discover the condition and to take such precautions."

Prosser, Torts § 64 at 413 (4th ed. 1971). The same conclusions hold true for the liability described in Restatement (Second) of Torts § 840A (1977). See comment c to § 840A. See also *Minaya* v. *Massachusetts Credit Union Share Ins. Corp.*, 392 Mass. 904, 906-907 (1984) (adopting § 840A for the benefit of those outside the land transferred and to whom the vendor would have been liable before the sale); *Philadelphia Elec. Co.* v. *Hercules, Inc.*, 762 F.2d 303, 312-315 (3d Cir.), cert. denied, 474 U.S. 980 (1985) (dismissing a nuisance action by a landowner against a predecessor in title for hazardous material buried on the land). There is nothing in *Connerty* v. *Metropolitan Dist. Commn.*, 398 Mass. 140 (1986), which supports a contrary conclusion. Summary judgment was properly granted for Lipton on this count.

2. *Other common law claims.* The plaintiff has brought misrepresentation counts against both defendants. Summary judgment should not have been granted on these counts.

We think the answer of Algonquin's broker — "Don't worry about it" — made in direct response to a question by the plaintiff about the possible presence of hazardous material on the property cannot be held, as matter of law, to be incomprehensibly ambiguous or mere seller's talk. On the present record, it is possible that the statement could be found to be a false statement of fact. The remark is not to be looked at in isolation but in the context of the whole situation. "It is enough if all the circumstances considered together would warrant the [fact finder] in concluding that it was untrue." *Commonwealth* v. *Morrison*, 252 Mass. 116, 122-123 (1925).

It also cannot be said, as matter of law, that Lipton is not liable for the statement because it was an unauthorized representation by its agent. Despite Lipton's assertion that Algonquin had no authority to speak for it about possible contamination of the land, there is sufficient indication in the materials submitted in opposition to summary judgment that Algonquin was actively involved in the negotiations that led to the sale. The situation could be found to fall within the rule in *Cellucci* v. *Sun Oil Corp.*, 368 Mass. 811, 811-812 (1975), ("However, while the [principal] might not have clothed the agent with

authority to execute the contract, it placed him in a position of sufficient ostensible authority to negotiate it to the point where all that was necessary was its formal execution . . . . Consequently, the [principal] must be held responsible for the manner in which the agent conducted himself during those negotiations . . . ." [citations omitted] ). There are issues of fact to be decided on the scope of Algonquin's authority.[4] See also *Cellucci* v. *Sun Oil Corp.*, 2 Mass. App. Ct. 722, 729-732 (1974).

Finally, the materials in the record create a triable issue on the question of the plaintiff's reliance on the statement. On that point, the provisions in the purchase and sale agreement that the plaintiff accepted the conveyance "as is," that he "recognize[d] that [s]eller makes no warranties whatsoever," and that he "has not been influenced to enter into this transaction nor has he relied upon any warranties or representations not set forth in this agreement or previously made in writing" (none was set forth or made) cannot assist either defendant in obtaining summary judgment. Massachusetts case law rejects the assertion of "as is" and like clauses as an automatic defense to allegations of fraud or deceit. "The same public policy that in general sanctions the avoidance of a promise obtained by deceit strikes down all attempts to circumvent that policy by means of contractual devices. In the realm of fact it is entirely possible for a party knowingly to agree that no representations have been made to him, while at the same time believing and relying upon representations which in fact have been made and in fact are false but for which he would not have made the agreement."[5] *Bates* v. *Southgate*, 308 Mass. 170, 182 (1941).

---

[4] Algonquin itself, of course, would be liable for any deceit or misrepresentation proved against it.

[5] The plaintiff has labelled his misrepresentation claims as claims of negligent misrepresentation. The lengthy statement of the claims and the materials in the record are sufficient, however, to warrant a finding of deceit in the traditional sense, that is, an intentional or reckless misrepresentation of material fact meant to be relied upon and in fact relied upon. We do not think the label attached to the claims should govern their substance and suggest (after any amendment that might be appropriate) that the claims reasonably should be allowed to proceed as claims for both deceit and

See also *John A. Frye Shoe Co.* v. *Williams*, 312 Mass. 656, 661 (1942); *V.S.H. Realty, Inc.* v. *Texaco, Inc.*, 757 F.2d 411, 418 (1st Cir. 1985). Of course, the exculpatory clauses may have "evidential value . . . as tending to show that no representations were in fact made, or if made that they were not relied upon."[6] *Bates* v. *Southgate*, 308 Mass. at 183.

Both defendants have argued forcefully that the plaintiff, an experienced businessman who had the benefit of legal counsel before he signed the purchase and sale agreement, could not have relied on any statement that might have been made about the land. This may ultimately be found to be so. Because, however, these are proceedings under Mass.R.Civ.P. 56, the plaintiff's proof and affidavits presented in opposition to summary judgment must be strictly construed against the defendants, the parties seeking summary judgment, and the plaintiff is given the benefit of all favorable inferences. *Foley* v. *Matulewicz*, 17 Mass. App. Ct. 1004, 1005 (1984). The motion judge should not have considered the credibility of the parties. For purposes of deciding the motion, he was required to take the plaintiff's anticipated testimony and other evidence as true.

3. *Claims under G. L. c. 93A.* The plaintiff has brought counts pursuant to G. L. c. 93A, §§ 2 (*a*) and 11, against both

negligent misrepresentation. We believe, although we do not decide, that the rule in *Bates* v. *Southgate*, 308 Mass. 170, 182 (1941), would apply to a misrepresentation that was determined to be negligent rather than intentional or reckless.

[6] Three other common law claims brought by the plaintiff can be disposed of briefly. The plaintiff has brought a claim against Algonquin (count six) for "failure to investigate." In his brief, the plaintiff indicates that this claim is predicated upon Restatement (Second) of Torts § 552 (1977). That provision states the general rule of liability for negligent misrepresentation. Since the plaintiff has already made a claim against Algonquin (in count five) for negligent misrepresentation, this claim (count six) should be dismissed as redundant.

The plaintiff has also brought claims against Lipton (count four) and Algonquin (count eight) for "breach of [the] implied covenant of good faith and fair dealing." As Restatement (Second) of Contracts § 205 (1981) makes clear, this covenant pertains to bad faith in the performance of a contract, not in its execution. See comments a and c to § 205. Massachusetts cases have so applied it. See, e.g., cases collected in *Fortune* v. *National Cash Register Co.*, 373 Mass. 96, 103 (1977). Summary judgment was properly granted on these two claims.

defendants. Summary judgment should not have been granted on those counts. If the plaintiff is able to establish that the defendants are liable for deceit or misrepresentation (in keeping with the discussion in part 2 of this opinion), he may be entitled to some recovery under c. 93A. See *Glickman* v. *Brown*, 21 Mass. App. Ct. 229, 234-235 (1985).

If the fact finder concludes that the broker did not make the statement attributed to him, that it did not amount to a representation of fact, that it did not bind Lipton, or that it was not made deceitfully or recklessly, the plaintiff alleges alternative c. 93A liability against one or both of the defendants on the basis of the regulation set forth in 940 Code Mass. Regs. § 3.16 (2) (1978). This regulation states that it is an unfair or deceptive act if "[a]ny person . . . fails to disclose to a buyer or prospective buyer any fact, the disclosure of which may [*sic*] have influenced the buyer or prospective buyer not to enter into the transaction."

That provision extends liability under c. 93A to cases of nondisclosure of material fact. To recover under the regulation, the plaintiff would have to show (1) that one or both of the defendants knew that the property was contaminated with hazardous material; (2) that the contamination was a material circumstance which would have led the plaintiff not to purchase the property;[7] and (3) that one or both of the defendants failed to disclose the problem. The plaintiff must also show that the transaction took place in a business context. See *Begelfer* v. *Najarian*, 381 Mass. 177, 191 (1980).

The last point was not disputed in the summary judgment proceedings. The materials in the record could be found to warrant a judge in concluding that both defendants knew about the contamination but failed to disclose it. See *Mongeau* v. *Boutelle*, 10 Mass. App. Ct. 246, 248-249 (1980), and cases cited. Proof that the defendants may have had knowledge of the matter inquired about distinguishes the case from others

---

[7] This element is not as clear as it might seem. We note that the plaintiff has apparently made a handsome profit on the land, a fact which may be of relevance in deciding whether he would have gone through with the sale had he known about the contamination.

such as *Nei* v. *Burley*, 388 Mass. 307, 316-317 (1983), where no c. 93A liability was found because the defendants were unaware of the problem. See also *Lawton* v. *Dracousis*, 14 Mass. App. Ct. 164, 170-171 (1982). These cases affirm the obvious principle that someone should not be liable for not disclosing what he does not know. Compare *Nei* v. *Boston Survey Consultants, Inc.*, 388 Mass. 320, 323-324 (1983) (no c. 93A liability where defendant did not deal directly with plaintiffs and conveyed accurate soil test results without explaining their significance). The defendants may also be able to avoid liability if it is shown that the plaintiff knew about the contamination. They have presented no absolute proof, however, that the plaintiff had knowledge. We think this is a case in which possible c. 93A liability (as well as liability on other theories discussed in this opinion) is best judged in light of the circumstances of the entire transaction including the knowledge and motives of the parties. See *Swanson* v. *Bankers Life Co.*, 389 Mass. 345, 349 (1983); *Noyes* v. *Quincy Mut. Fire Ins. Co.*, 7 Mass. App. Ct. 723, 726 (1979).[8]

There may also be important questions of law with respect to liability under c. 93A for pure nondisclosure in a case involving sophisticated businessmen and an "as is" agreement such as the one here. The concerns were outlined in a thought-provoking way in the dissenting portion of Judge Breyer's separate opinion in *V.S.H. Realty, Inc.* v. *Texaco, Inc.*, 757 F.2d at 420-422. Any issues arising out of the relationship between c. 93A and a transaction in which, as Judge Breyer puts it (at 421), a "knowledgeable business buyer quite clearly knows what kind of situation he is getting into, and, in all likelihood, it is one (given [any reductions in] the price) that he wants," are best considered in light of a full trial record with the benefit of findings of fact and conclusions of law by the judge who hears the case.

---

[8] The presence of the "as is" provision in the agreement, and the further provision that the plaintiff "inspected the . . . premises and [was] satisfied therewith" would not, for the reasons previously discussed, bar the c. 93A claims as matter of law. See *V.S.H. Realty, Inc.* v. *Texaco, Inc.*, 757 F.2d at 415-419. Cf. *Mongeau* v. *Boutelle*, 10 Mass. App. Ct. at 248. As indicated, the provisions would have evidential value on the questions of knowledge and reliance by the plaintiff.

*4. Claims under G. L. c. 21E.* The plaintiff's last two counts are framed against Lipton alone and are founded on G. L. c. 21E, the Massachusetts Oil and Hazardous Material Release Prevention Act (Act). Summary judgment should not have been granted on these counts.

Section 4 of G. L. c. 21E, inserted by St. 1983, c. 7, § 5, provides that "[a]ny person who undertakes assessment, containment, or removal action regarding the release or threat of release of oil or hazardous material shall be entitled to reimbursement from any other person liable for such release or threat of release for the reasonable costs of such assessment, containment and removal." This provision creates a private right of action to enforce the purposes of the Act. The plaintiff states in his affidavit that he has expended substantial funds for assessment and removal of material on the land. He must, of course, establish that the material is hazardous material as that term is defined in G. L. c. 21E, § 2, but no one has demonstrated at this point the likelihood that it is not (and the contrary appears to be the case). Lipton remains responsible as a "person[] liable" under the Act, which in § 5 *(a)* (2), extends liability to prior owners of land upon which hazardous material has been stored. Lipton's principal defenses are statutory and are set forth in G. L. c. 21E, § 5 *(c)*. Lipton may be able to join other more active parties which may be liable to it, see G. L. c. 21E, § 5 *(e)*, but the first sentence of § 5 *(f)* specifically provides that it cannot rely upon the conveyance to the plaintiff, or upon the language of the purchase and sale agreement and deed, to limit any liability it might have to the plaintiff under the Act. Simply put, the Act is drafted in a comprehensive fashion to compel the prompt and efficient cleanup of hazardous material. To achieve this goal, the Act prohibits successive owners from avoiding their responsibilities for cleanup by artful language in sales agreements or deeds. In the circumstances of this case, the plaintiff and Lipton could each be liable to the Commonwealth, for the costs of cleanup.

Lipton asks us to adopt a rule parallel to that of several United States District Courts that a private cause of action under the Comprehensive Environmental Response, Compensa-

tion, and Liability Act (CERCLA), 42 U.S.C. §§ 9601 et seq. (1982), the Federal analogue of G. L. c. 21E, does not accrue until the Environmental Protection Agency (EPA) has approved containment or cleanup or otherwise made claim of damages against the owner.[9] See, e.g., *Artesian Water Co.* v. *Government of New Castle County,* 605 F. Supp. 1348, 1360 (D. Del. 1985). However, this argument overlooks the fact that the EPA has promulgated regulations rejecting the principle of the *Artesian Water Co.* case, and other decisions like it, see 50 Fed. Reg. 5870 (1985), and the additional fact that the principle has been disapproved in decisions by several circuits of the United States Court of Appeals. See *Wickland Oil Terminals* v. *Asarco, Inc.,* 792 F.2d 887 (9th Cir. 1986); *NL Indus.* v. *Kaplan,* 792 F.2d 896 (9th Cir. 1986). Cf. *Dedham Water Co.* v. *Cumberland Farms Dairy, Inc.,* 805 F.2d 1074, 1078-1079 (1st Cir. 1986); *New York* v. *Shore Realty Corp.,* 759 F.2d 1032, 1047 (2d Cir. 1985). In view of the regulation of EPA and these decisions, and the language of G. L. c. 21E, which sets forth a private right of action with greater clarity than its Federal counterpart (compare the first sentence of the third paragraph of § 4 of c. 21E, and 42 U.S.C. § 9607[a] [4] [B] [1982]), we hold that the plaintiff does not under Massachusetts law have to wait until the DEQE has approved correction of the problem or sought damages before asserting a claim against Lipton under G. L. c. 21E "for reimbursement . . . for the reasonable costs of . . . assessment, containment and removal."

5. *Damages.* The defendants argue that, even if the plaintiff can prove substantive liability on some of his claims, he cannot establish damages because he has sold portions of the property for a price far in excess of the $1,100,000 he paid to acquire

---

[9] Lipton argues that the EOEA notice received by the plaintiff was not notice under the Act to clean up the property but merely notice that an environmental impact report would be required before the property could be developed. While the notice does not appear to be the notice contemplated by § 4 of c. 21E, we consider it sufficient to advise the plaintiff of his potential responsibility under the Act, as the notice specifically refers to the need to contain or remove the hazardous material on the property before State approval will be granted for development.

it. We believe that the issue of damages should be explored further. Whatever may be the situation as to general damages, the plaintiff, it appears, would be able, if he succeeds on his claims, to recover any reasonable costs he has incurred to contain and clean up the hazardous material. He alleges in his affidavits and other material that these costs are substantial and may rise well into six figures. If the plaintiff recovers on his c. 93A claims, he may also be entitled to reasonable attorney's fees.[10]

6. *Conclusion.* The judgments for Lipton and Algonquin are reversed. An order is to be entered with respect to the second amended complaint dismissing count six against Algonquin, and directing the entry of judgment pursuant to Mass.R. Civ.P. 56 for Lipton on counts one and four and for Algonquin on count eight. The case is to stand for further proceedings in the Superior Court consistent with this opinion on counts two, three, nine, and ten against Lipton and on counts five and seven against Algonquin.

*So ordered.*

---

[10] The discussion in the preceding parts of this opinion must necessarily be somewhat tentative at this stage of the litigation as we are without knowledge of the facts which may be found at trial. What has been said on various issues should be viewed as essentially preliminary guidance and provisional decisions of law on facts largely unknown at present.