Welch, J.
The plaintiff, Marlene Maletz, brought several different causes of action against named defendants. This decision addresses only one count of common law fraud (Count I) against defendant Paul Sandler. Maletz sues Sandler “in his individual capacity and as executor of the estate of the late Dorothy Sandler.” The plaintiff alleges that Sandler intentionally and materially misrepresented that there was no leaking in the basement of a house which Maletz was considering buying. These material misrepresentations allegedly were made with an intent to induce her to purchase the property. Maletz relied upon Sandler’s misrepresentations, purchased the property, and has suffered damages.
This motion to dismiss was brought by defendant, Paul Sandler, pursuant to Mass.R.Civ.P. 12(b)(6). Sandler’s motion to dismiss is based on two main theories: 1) an “as is” disclaimer in the purchase and sale agreement and 2) the statute of limitations. After holding a hearing on defendant’s motion to dismiss, the court concludes that this motion must be ALLOWED.
The applicable factual allegations are taken from the complaint. Plain tiff Maletz, a Massachusetts attorney, after some negotiation and other preliminaries contacted to purchase a home at 481 Dudley Road, Newton, Massachusetts from Paul Sandler. Defendant Paul Sandler, who was acting as “executor of the estate of Dorothy Sandler,” his mother, listed the property for sale. Complaint ¶7. The neighborhood has a very high water table, and most of the homes in the immediate area had drainage problems and basement flooding. Both of these conditions were known to Sandler (¶10 of the complaint). Also, Sandler had the basement walls painted gray to cover any water stains from prospective buyers (¶12). On August 8th, Sandler signed and dated a “Statement of Conditions” regarding the property to be sold. This statement (which was delivered to plaintiff in mid to late August) included representations that there was no leaking, water seepage, or dampness in the basement. Complaint ¶20.
*698 Maletz viewed the property and signed a written offer to purchase the property on August 10, 1992. Complaint ¶13. She viewed the property (including the basement) again five days later. In late August and September, plaintiff had the house and foundation inspected several times. Complaint ¶¶14-19. On August 27, 1992 the purchase and sale agreement was signed by plaintiff and defendant Sandler. November 2, 1992 was the closing date.
The property was inspected by a home inspector at least once, and a structural engineer several times. The engineer found some structural problems. An agreement was worked out between Maletz and Sandler, whereby Sandler would deduct $5,000.00 from the purchase price of the property at closing.
Maletz moved into the property on Saturday, November 21, 1992. That evening and over the next two days, it rained causing flooding in the basement. The basement and backyard were flooded on several occasions in November, December and January of 1992-1993. Maletz excavated around the foundation in order to waterproof the basement. Additional renovations were also needed which resulted in a $40,000.00 expenditure.
DISCUSSION
A. The Purchase and Sales Disclaimer
Sandler first argues that a negotiated, non-boiler plate provision in the purchase and sale agreement that sold the property “as is” made any earlier alleged misrepresentations irrelevant. The Massachusetts courts have looked at certain factors (1) counsel representation, (2) negotiation at arm’s length, and (3) a boiler-place provision versus a contract which is a complete, accurate and final understanding of the parties, in determining whether there is any possible survival of warranties or representations. Even when an express provision in a Purchase and Sale Agreement provides that any prior warranties or representations do not apply, and the buyer takes the property “as is” the court may still look to see if the “as is” provision was negotiated at arm’s length.
Sandler relies on Greenery Rehabilitation Group, Inc. v. Antaramian, 36 Mass.App.Ct. 73 (1994). In Greenery, the buyer (Greenery) bought a building from defendants. The seller represented to Greenery that the tenants were “as good as gold,” “solid,” “in good standing,” “rents right up to date.” Four months after Greenery closed on the building, Northern Construction, the building’s “long term tenant,” defaulted on their lease and vacated the building.
There was a clause in Greenery’s purchase and sale agreement similar to the clause in this case. Greenery’s purchase and sale clause allowed all prior warranties and representations to be merged into the purchase and sale agreement and neither party could rely on past representations. The court found that the statements made by the seller, regardless of how they were viewed, were “eliminated by the purchase agreement itself ... It is clear beyond doubt that the question of the possible survival, beyond the date of formal agreement, of any antecedent representations or warranties was itself negotiated seriously and at length.” Greenery, 36 Mass.App.Ct. at 76-77 (1994). The court concluded that the parties negotiated and agreed to these provisions and the provision’s were not “boilerplate.” See McEvoy Travel Bureau, Inc. v. Norton Co.,[2] 408 Mass. 704 (1990); Turner v. Johnson & Johnson,[3] 809 F.2d 90 (1st Cir. 1986).
In contrast, Maletz relies on Sheehy v. Lipton Industries, Inc., 24 Mass.App.Ct. 188 (1987). In Sheehy, the buyer inquired whether the property had any potential hazardous material. The broker responded, “Don’t worry about it.” The sale was finalized which included an “as is” clause in the purchase and sale agreement. The buyer later discovered that parts of the property contained hazardous material. The Sheehy court followed the line of Massachusetts cases which “rejects the assertion of‘as is’ and like clauses as an automatic defense to allegations of fraud and deceit.” Sheehy, 24 Mass.App.Ct. at 193. See Bates v. Southgate, 308 Mass. 170 (1941).
There is undoubtedly some tension between Greenery and Sheehy as they apply to this case. Under Greenery, the rationale would be that Maletz is an attorney and is represented by counsel. She had an inspector and a structural engineer look over the property and basement several times. She negotiated a $5,000.00 settlement for defects in the foundation. All this negotiation was done at arm’s length. However, under Sheehy, the Massachusetts Appeals Court rejected an “as is” clause as a defense to fraud. Here, Maletz is alleging fraud.
Regardless of who has the better argument, these issues require resolving facts well beyond the allegations contained in the pleadings. More discovery is needed to determine how much deliberation and negotiation there was between the parties in drafting the purchase and sale agreement. For example, was the provision in the rider of the P & S Agreement regarding taking the property “as is” merely boilerplate, or was it a final, complete and accurate understanding of the parties which merged all prior representations? These are matters better addressed on a summary judgment motion after more discovery.
B. The Statute of Limitations
The second argument Sandler makes is that Maletz is barred from bringing suit because of the one year statute of limitations against executors. M.G.L.c. 260, §11 states in pertinent part: “An action founded on any contract or act done, if made or done by any person acting as the executor ... of the estate of a deceased person, shall be brought within one year . . . after the right of action accrues.”
In arguing this portion of the motion to dismiss, the parties again wander far from the pleadings. This time, however, the facts necessary to rule on the argument *699 are well settled and presented in verified form. Thus, this motion may be converted into one for summary judgment. M.R.Civ.P. Rule 12(b).
Although sued in his capacity both as individual and executor, it is undisputed that Sandler was acting in the capacity as executor of his mother’s estate during the listing and sale of 481 Dudley Road. See Complaint ¶7. The plaintiff has presented no evidence to the contrary.
The Offer to Purchase Real Estate was accepted by Sandler on August 14, 1992 as the “Nominated Executor” and “subject to the appointment of Paul Sandler as executor... [and] subject to sellers ability to obtain license to sell from Middlesex Probate Court as to the terms and conditions of the agreement.” The resulting Purchase and Sale Agreement (dated August 20, 1992) was again signed by Sandler as “Executor” and contained the following express provision:
The Seller’s obligations under this Agreement, as nominated Executor, shall be subject to his appointment, by the Middlesex Probate Court, as Executor of the Estate of Dorothy Sandler. Seller enters into this transaction in his fiduciary capacity only and not individually. Seller shall use best efforts to effectuate the appointment.
(¶9 of Purchase and Sales Rider.)
Indeed, if Sandler had been appointed “Executor” before commencing a negotiation for sale of the property, there would be no doubt whatsoever that this action would be time barred. The problem occurs, however, because Sandler offered the property for sale, signed a Statement of Condition and executed the Purchase and Sale Agreement before formally being appointed “Executor.”
An uncontested time line, derived from Sandler’s Affidavit and various exhibits, establishes the following:
August 8, 1992 — Statement of Condition signed (delivered to plaintiff in mid to late August)
August 10, 1992 — Written Offer to Purchase signed by plaintiff (Plaintiff inspects property)
August 12, 1992 — Sandler flies petition to be appointed Executor with Probate Court.
August 14, 1992 — Sandler accepts offer by signing as “Nominated Executor.”
August 15, 1992 — Plaintiff inspects property again. Late August — House and foundation inspections. August 27, 1992 — Purchase and Sale signed
September — Further structural engineering inspections
September 11, 1992 — Defendant Sandler appointed as Executor by Probate Court.
November 2, 1992 — closing date.
Maletz argues that because Sandler had not been appointed “Executor,” he is individually liable. Furthermore, she argues Sandler could have avoided individual liability by petitioning the court to be appointed a “Temporary Executor” pursuant to M.G.L.c. 192, §§13-16. This procedure would have allowed Sandler to “take charge of the real property.” G.L.c. 192, §14(1). While it is unclear if “Temporary Executor” powers include actual sale of real estate, it is arguable that a temporary Executor might engage in preliminary negotiations and arrangements.
While it may have been more procedurally proper for Sandler not to negotiate the sale of the property of his mother’s estate until he either was officially appointed “Executor” or “Temporary Executor,”[4] this oversight does not prevent him from avoiding personal liability and the benefit of the M.G.L.c. 260 §11 one year limitations period. The negotiations, all along, were explicitly contingent upon Sandler being appointed “Executor.” Sandler took pains to identify himself as the “nominated” executor and the parties acknowledged that Sandler was entering into the listing, negotiations and sales transaction solely in his capacity as the nominated (and not yet appointed) executor. Throughout this transaction, it is uncontra-dicted that Sandler was “acting as the executor” of his mother’s estate. Given the length of Probate Court proceedings, it is not unusual — and it often may be desirable — for the nominated executor to engage in preliminary negotiations regarding the sale of property before the formal appointment is obtained. Given the explicit disclosure of Sandler’s status and the agreement that all was contingent upon his being appointed executor, the apparent policies underlying Chapter 260 §11 (e.g. encouraging people to serve as executors, encouraging disclosure of their status as executors, limiting the limitations period in order that estates may be probated with finality) are as well served here as in a situation where one was the formally appointed executor. Therefore, the language of Section 11 covers defendant Sandler’s actions as he was “acting as the executor.”
Furthermore, the cause of action upon which the plaintiff sues did not arrive until Sandler indeed was the appointed executor. Although the alleged misrepresentations concerning the leaky basement took place before Sandler was appointed “Executor,” this cause of action could not have arisen until after Maletz closed on the property and the property leaked. At the closing, Sandler was the formally designated “Executor.”
For these reasons, Count I is barred by the statute of limitations contained in M.G.L.c. 260 §11.
ORDER
For the foregoing reasons, the defendants’ motion to dismiss is ALLOWED.

In McEvoy, McEvoy had provided air travel service for three decades to Norton Co., an international conglomerate. Norton Co. induced McEvoy, who was not represented by counsel, to sign one year contracts, after McEvoy had relocated his business, signed a five year lease and purchased machines to accommodate new business from Norton Co. The contract had a termination clause which Norton Co.’s representatives stated were “meaningless” or “inoperative.” The court distinguished this case from Turner in that the misrepresentations in McEvoy were not a part of negotiations, but were thrown in at the last minute and did not represent the parties’ complete understanding.

In Turner, the court concluded that the contract was negotiated over several months between two experienced business persons, and that the written contract represented a complete and final understanding of the parties.

Given the language of Chapter 260 §11, it appears questionable if someone appointed as “Temporary Executor” would fit within the construct of § 11 any more easily than one who is the nominated executor and who is acting as executor while their petition for appointment is pending in the Probate Court.