Velis, J.
This claim arises out of the release of hazardous materials on property owned by the plaintiff George Gemme (“Gemme”) in 1976. The Certain Defendants have filed a counterclaim against Gemme for contribution pursuant to G.L.c. 21E, §§4 and 5, the Massachusetts Oil and Hazardous Material Release Prevention Act (the “Act”). This matter is before the Court on the Certain Defendants’ motion for summary judgment on their counterclaim for contribution. For the reasons set forth below, the Certain Defendants’ motion is ALLOWED.
I. BACKGROUND
The undisputed material facts, and the disputed facts viewed in the light most favorable to the non-moving party, are as follows.
At all times relevant to this action, Gemme was the owner of certain real property located at 5 Stafford Street in Leicester, Massachusetts (the “Site”), and Fournier was the President of LWS, a business involved with cesspools, septic tanks, and oil spill cleanups. In 1974, Gemme orally agreed to allow Fournier and LWS to construct a lagoon on the Site for the purposes of collecting and storing oil and hazardous material. Gemme did not receive any consideration, monetary or otherwise, for allowing Fournier to store hazardous material on his property.[2] Rather, Gemme allowed Fournier to use the Site as a favor, as he felt that Fournier’s business could use some help.
From 1974 through 1976, LWS hauled and transported oil and hazardous material to the lagoon on Gemme’s property. In 1976, a wall of the lagoon broke and released the hazardous material contained therein onto the Site (the “1976 Release”). Following the 1976 Release, some limited response actions were taken by or on behalf of Gemme and Fournier, including spill cleanup and closure of the lagoon. In 1985, Gemme and Fournier received a Notice of Responsibility (“NOR”) from the Department of Environmental Quality Engineering (“DEQE”),[3] advising them of their responsibility for the continuing release and threat of release at the Site caused by the 1976 Release. Gemme and Fournier subsequently entered into a Consent Order with the DEQE, whereby they agreed to prepare a Site Remediation Plan. However, in July 1988, the DEQE notified Gemme that he was in violation of the Consent Order due to his failure to conduct the required remedial measures.
In November 1988, Gemme brought this action pursuant to G.L.c. 2 IE against Fournier, LWS, and the Certain Defendants. The Certain Defendants brought a counterclaim under G.L.c. 2 IE against Gemme. In a Consent Order dated December 13, 1995, the Certain Defendants agreed to remediate the Site, and to reimburse the DEP for past response costs incurred by the Commonwealth. The Certain Defendants have incurred approximately $1,000,000 in costs in their efforts to remediate the site, and they have reimbursed the DEP in the amount of $415,057.33.
II. DISCUSSION
Summary judgment is appropriate where there are no issues of genuine material fact, and the moving pariy is entitled to judgment as a matter of law. Ng Bros. Constr., Inc. v. Cranney, 436 Mass. 638, 643-44 (2002), citing Kourouvacilis v. General Motors Corp., 410 Mass. 706, 711 (1991); see also Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating that there is no triable issue of material fact. Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). A party moving for summary judgment who does not bear the burden of proof at trial may demonstrate the absence of a triable issue either by submitting affirmative evidence negating an essential element of the non-moving party’s case, or by showing that the non-moving party has no reasonable expectation of proving an essential element of its case at trial. Kourouvacilis, 410 Mass. at 716. When the non-moving party bears the burden of proof on an issue for which summary judgment is sought, that party must oppose the motion with admissible evidence on the issue in order to defeat the summary judgment motion. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). *367 When presented with a motion for summary judgment, the court must consider the evidence in the light most favorable to the non-moving party. Beal v. Board of Selectmen of Hingham, 419 Mass. 535, 539 (1995).
The parties do not dispute that, as the owner of the Site at the time of the 1976 Release, Gemme may be held strictly liable for the 1976 Release under G.L.c. 21E, §5(a), unless he can establish that he is entitled to the protection of one of the defenses enumerated in G.L.c. 21E, §5(c). Gemme argues that he can meet the requirements of the “third-party liability” defense, which provides, in relevant part:
(c) Subject to the limitation provided in paragraph (d), there shall be no liability under paragraph (a) for a person otherwise liable who can establish by a preponderance of the evidence, (A) that the release or threat of release of oil or hazardous material and the damages resulting therefrom were caused by:
... (3) an act or omission of a third party other than an employee or agent of the person, or than one whose act or omission occurs in connection with a contractual relationship existing directly or indirectly, with the person ... if the person establishes by a preponderance of the evidence that he exercised due care with respect to the oil or hazardous material, that he took precautions against foreseeable acts or omissions of any third party and the consequences that could foreseeably result from such acts or omissions, and that he complied with all notification requirements of section seven.
G.L.c. 21E, §5(c){3).
The interpretation of a statute is a matter of law for the Court to decide. Flemings v. Contributory Ret. Appeal Bd., 431 Mass. 374, 375 (2000). In interpreting a statute, none of the words should be regarded as superfluous and each should be given its ordinary meaning so that the statute when read as part of the overall enactment shall be consistent and harmonious and capable of carrying out the presumed intent of the legislature. Fleming, 431 Mass. at 375, quoting Commonwealth v. Woods Hole, Martha’s Vineyard & Nantucket S.S. Authority, 352 Mass. 617, 618 (1967).
Gemme, who has the burden of establishing the third-party liability defense, contends that the 1976 release was caused by a third party, namely Fournier, and that he never entered into a “contractual relationship” with Fournier. In support of his argument that there was no contractual relationship between himself and Fournier, Gemme relies primarily on the fact that he received no consideration in exchange for his allowing Fournier to store hazardous waste on his property. At the very least, according to Gemme, the issue of whether there was a contractual relationship between himself and Fournier is a question of fact for a jury to decide.
There is certainly a factual dispute as to the terms of the agreement entered into by Gemme and Fournier, particularly with regard to whether or not Fournier agreed to allow Gemme unlimited access to his motor home in exchange for Gemme allowing Fournier to store hazardous waste on his property. However, this is not a dispute of material fact, because even viewing the facts in the light most favorable to Gemme, he has no reasonable expectation of establishing the lack of a contractual relationship between himself and Fournier. Stated otherwise, even assuming that the agreement between the two parties was not supported by consideration, as a matter of statutory interpretation (and therefore as a matter of law) there was still a “contractual relationship” between Gemme and Fournier such that Gemme may be held liable for his share of the response costs incurred by the Certain Defendants.
The term “contractual relationship” is not defined in G.L.c. 2 IE, and there are no Massachusetts appellate decisions that have analyzed the scope of this term as it relates to the third-party liability defense contained in G.L.c. 2IE, §5(c).[4] Nevertheless, the plain language contained in G.L.c. 2 IE, §5(c) demonstrates that the Legislature envisioned a broad reading of the term “contractual relationship.” For example, instead of “contractual relationship,” the Legislature could have employed the term “contract,” or it could have expressly enumerated the types of “contractual relationships” that would lead to the imposition of liability. However, instead of limiting the term, the Legislature broadened it by precluding the third-party liability defense in situations where the third party’s act or omission “occurs in connection with a contractual relationship existing directly or indirectly with the person [otherwise liable under §5(a)].” G.L.c. 2IE, §(5)(c)(3) (emphasis added).
The Legislature’s decision to render the third-party liability defense unavailable in situations where the third party was acting pursuant to an “indirect contractual relationship” demonstrates that the Legislature was concerned about the possibility that otherwise liable parties might be able to escape liability by entering into arrangements that, while perhaps not legally enforceable contracts, nevertheless played a role in the release of hazardous waste. This point finds further support from the broad language contained in G.L.c. 21E, §5(a)(3), which provides that “any person who by contract, agreement, or otherwise, directly or indirectly, arranged for the storage ... of hazardous material... in a site ... at which there is or has been a release or threat of release of hazardous material. . . shall be liable, without regard to fault."
In Sheehy v. Lipton Industries, Inc., 24 Mass.App.Ct. 188, 197 (1987), the Appeals Court held that a former owner of a contaminated site could not rely upon the “as is” language contained in the purchase and sale agreement to escape liability trader G.L.c. 2 IE. Recognizing the remedial purpose of G.L.c. 2IE, the Court stated:
*368 Simply put, the Act is drafted in a comprehensive fashion to compel the prompt and efficient cleanup of hazardous material. To achieve this goal, the Act prohibits successive owners from avoiding their responsibilities for cleanup by artful language in sales agreements or deeds. In the circumstances of this case, [both the seller and the purchaser] could each be liable to the Commonwealth, for the costs of cleanup.
Sheehy, 24 Mass.App.Ct. at 197. The preceding passage is further evidence that G.L.c. 2 IE should be liberally construed to effectuate the remedial goals of the Legislature.
In this case, it is undisputed that Gemme and Fournier entered into an agreement whereby Fournier would be allowed to store hazardous materials on Gemme’s property. Even if he did not receive any consideration as a result of this arrangement, Gemme is hardly an “innocent owner” who knew nothing about the potentially risky activities taking place on his property. Quite to the contrary, Gemme voluntarily allowed Fournier to enter his property and store hazardous materials therein. Where a landowner consciously allows the storage of hazardous waste on his property, he cannot escape liability under G.L.c. 21E simply because he did not receive any consideration in return. Therefore, as Gemme has no reasonable expectation of establishing the lack of a “contractual relationship” between himself and Fournier, Gemme may be held liable for his share of the response costs incurred by the Certain Defendants.

ORDER

For the foregoing reasons, it is hereby ORDERED that the Certain Defendants’/Counterclaim Plaintiffs’ motion for summary judgment be ALLOWED.

The Certain Defendants contend that Gemme did receive consideration for this agreement, and their contention finds some support in the summary judgment record. Fournier testified in his deposition that he allowed Gemme unlimited usage of his motor home in exchange for Gemme letting Fournier dispose of hazardous waste at the Site. However, viewing this factual dispute in the light most favorable to Gemme, this Court proceeds on the factual premise that Gemme did not receive any consideration for the Agreement.

The DEQE is now known as the DEP.

It is worth noting that under the corresponding provisions of the Federal Comprehensive Environmental Response, Compensation and Liability Act (“CERCLA”) a “contractual relationship” includes, “but is not limited to, land contracts, deeds, easements, leases, or other instruments transferring title or possession.” 42 U.S.C. §9601(35) (emphasis added). The Supreme Judicial Court has described CERCLA as the “Federal analogue” to G.L.c. 21E. Oliveira v. Pereira, 414 Mass. 66, 71 n.7 (1992).