Hinkle, J.
The defendant, Universal Underwriters Insurance Company, brings two motions for summary judgment against plaintiffs-, McGrail Associates, Inc., Regina Leavitt and Edward Leavitt. In its first motion, defendant argues that the statute of limitations bars plaintiffs’ claims. In its second motion, defendant contends that plaintiffs' insurance policy does not cover their claims.
After hearing and consideration of the parties’ submissions, for the foregoing reasons I ALLOW in part and DENY in part both motions.
BACKGROUND
The following facts, derived from the parties’ submissions, are undisputed or are otherwise viewed in the light most favorable to plaintiffs, the non-moving parties.
Plaintiffs operate several quick-lube retail stores, including Oil Doctor, a business at 445 Lincoln Street, Worcester, MA that provides oil changes and related automotive services. Sometime during 1995, an account executive from defendant’s offices discussed with plaintiffs an insurance policy that would insure plaintiffs’ buildings and business at 445 Lincoln Street against various risks, including fire. Defendant’s representative provided plaintiffs with a binder containing a copy of defendant’s insurance proposal. Among the information was a document covering the proposed property coverage and a Section entitled “Special Coverage or Endorsements” under which two boxes were checked. One box referred to “Replacement Cost — Contents/Equipment at Location(s).” Another box was entitled “Value Protection — To guaranty Replacement Cost and to provide coverage for increased Cost of Construction, Debris Removal and Demolition Costs, Loss due to Building Ordinance.” At a later date, plaintiffs agreed to purchase the policy and paid defendant its premium. Subsequently, defendant issued plaintiffs an automotive floater policy no. A151671, effective October 15, 1995 to November 1, 1996.[2]
On November 22, 1995, a waste-oil hauler, Connecticut Waste Oil (“CWO”), allegedly caused a 2000-gallon oil tank to implode in plaintiffs’ basement. Plaintiffs sustained damage to both their oil tank and their real properly. Immediately after the accident, plaintiffs submitted to defendant a claim form regarding their loss. As of that date, plaintiffs had not yet received a written copy of their insurance policy from defendant. During the weeks that followed, plaintiff Regina Leavitt contacted defendant almost daily. A representative of defendant instructed Ms. Leavitt to pursue a claim against CWO vigorously. The representative also instructed Ms. Leavitt that his company would postpone its course of action until CWO’s insurer determined how to address the situation. Defendant’s representative also directed Ms. Leavitt to send several letters to CWO’s insurer requesting payment and information, including engineer reports, codes and equipment specification.
During January through April of 1996, Ms. Leavitt continued to communicate with defendant at least once a week. Defendant’s representative instructed Ms. Leavitt to continue her efforts against CWO’s insurer. He also advised her that a special, more experienced investigator would visit her premises to view the damages. No such investigator came. He also advised her that his company would send her a letter regarding her coverage. Plaintiff never received such a letter. In March 1996, plaintiffs received a written copy of the policy from defendant.
Sometime in late 1996 or early 1997, plaintiffs learned that repair of their oil tank would require the building’s foundation to be severed and that such construction would interrupt business for at least a few weeks, resulting in a loss of customers and revenue. Since November 1995, the damaged tank has remained in the containment room of defendant’s premises. Plaintiffs claim they lack the financial resources to repair the damages. Plaintiffs also allege that they continue to suffer financial losses because they must utilize a jeriy-rigged waste-oil system that requires additional labor and additional cost for waste-oil removal.
On or about October 20, 1998, plaintiffs submitted a demand letter to defendant’s representative under G.L.c. 176D and G.L.c. 93A. Defendant’s representative did not respond until September 14, 1999.
Plaintiffs’ complaint alleges two claims: a contract claim and a claim under G.L.c. 176D and 940 Code Mass. Reg. In their contract claim, plaintiffs allege that defendant breached their insurance contract by denying plaintiffs coverage for the damages they sustained in November 1995. In their 176D claim, plaintiffs allege that defendant failed to do the following: (1) advise them of changes in the renewal policy, (2) promptly provide them with the insurance policy, (3) promptly settle their claim and (4) promptly investigate the claim. Plaintiffs have also filed suit against CWO and an affiliated corporation.
DISCUSSION
Summary judgment is appropriate only when the moving party affirmatively establishes that no genuine issue of material fact exists on any relevant issue. See Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983). In deciding a motion for summary judgment, the court views the facts “in the light most favorable to . . . [the nonmoving party], taking all the facts set forth in its supporting affidavits as true.” G.S. Enterprises, Inc. v. Falmouth Marine, Inc., 410 Mass. 262, 263 (1991) (citation omitted). Once the moving party demonstrates the absence of a triable issue, the non-moving parly may *672 not simply rely on its pleadings but must respond “by affidavits or as otherwise provided in this rule [to] set forth specific facts showing that there is a genuine issue for trial.” Correllas v. Viveiros, 410 Mass. 314, 317 (1991), quoting Mass.R.Civ.P. 56(e).
A parly moving for summary judgment who does not have the burden of proof at trial may demonstrate the absence of a triable issue either by submitting affirmative evidence negating an essential element of the non-moving party's case or by showing that the nonmoving party lacks a reasonable expectation of proving an essential element of its case at trial. See Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 711 (1991). Conclusory assertions are insufficient to meet the nonmoving parly’s burden. See First National Bank of Boston v. Slade, 379 Mass. 243 (1976).
I. The Motion for Summary Judgment on Statute of Limitations Grounds
Defendant argues that plaintiffs did not file their claims within two years of the loss as required by the policy’s provisions and by G.L.c. 175, §99. In response, plaintiffs contend that the six-year contract statute of limitations in G.L.c. 260, §2 and the four-year limitations period in G.L.c. 260, §5A govern their claims.
A. Count I: Breach of Contract
In pertinent part, G.L.c. 175, §99 provides:
No suit or action against this company for the recovery of any claim by virtue of this policy shall be sustained in any court of law or equity in this commonwealth unless commenced within two years from the time the loss occurred . . .[3]
This statutory language “states broadly that no action for recovery of any claim by virtue of the policy shall be sustained unless brought within two years from the time the loss occurred." J.&T. Enterprises, Inc. v. Liberty Mutual Insurance Company, 384 Mass. 586, 588 (1981). Plaintiffs’ contract claim constitutes a claim “by virtue of th[e] policy” and thus falls under the purview of the statute’s two-year limitations period.
Plaintiffs’ argument that the four-year limitations period of G.L.c. 260, §5A governs their contract claim is misdirected. That statute provides a limitations period for all contract claims without any specificity. By contrast, G.L.c. 175, §99 specifically applies to fire insurance contracts. It is a fundamental canon of statutory construction that a general statutory provision yields to a specific one. See TBI, Inc. v. Board of Health of North Andover, 431 Mass. 9 (2000).
Plaintiffs’ equitable estoppel argument is also unavailing. The doctrine of equitable tolling is used “only sparingly." Irwin v. Department of Veterans Affairs, 498 U.S. 89, 96 (1990). Typically, the doctrine is limited to specified exceptions. See Andrews v. Arkwright Mut. Ins. Co., 423 Mass. 1021, 1022 (1996) (available for “excusable ignoran[ce]” or where defendant “affirmatively misled” plaintiff); Irwin v. Department of Veterans Affairs, supra (available where plaintiff “has actively pursued his judicial remedies by filing a defective pleading during the statutory period”). Here, plaintiffs essentially argue that defendant’s failure to provide promptly a copy of the written policy constitutes “inequitable conduct” that requires tolling the statute. Plaintiffs’ own evidence on summary judgment, however, reveals that they received a written copy of the policy in March 1996, well within the two-year statutory and policy limitations period.[4] Thus, the reasonable inference can be drawn that plaintiffs were aware of the limitations period and, thus, the time constraint in filing their suit. Under these circumstances, no recognized exception for estoppel applies.
Plaintiffs’ contention that the discovery rule tolls the statute of limitations also fails. First, the discovery rule appears unlikely to apply to actions under G.L.c. 175, §99. See Cramer v. Charter Oak Fire Insurance Co., 1997 WL 416587 (Mass.Super. 1997) (Hely, J.).[5] Second, even if it did apply, plaintiffs fail to meet their burden of showing that their claim comes within the discovery rule. The discovery rule operates to toll a limitations period only where a misrepresentation concerns a fact “inherently unknowable” to the plaintiffs, Friedman v. Jablonski, 371 Mass. 482, 485 (1976), or where a wrongdoer concealed the existence of a cause of action through some affirmative act done with the intent to deceive or breached a duty of disclosure. Puritan Medical Ctr., Inc. v. Cashman, 413 Mass. 167, 175 (1992). Plaintiffs have not demonstrated any such circumstance.
Accordingly, I find and rule that the two-year limitations period in G.L.c. 175, §99 and the insurance policy bar plaintiffs’ contract claim.
B. Count II: 176D Claim
Defendant argues that the two-year limitations period in G.L.c. 175, §99 also governs plaintiffs’ 176D claims. I disagree. The Appeals Court recently stated that “the statute of limitations set forth in the standard form contract found in G.L.c. 175, §99, must be read as inapplicable to claims brought under G.L.c. 93A that are grounded in G.L.c. 176D.” Schwartz v. The Travelers Indemnity Co., 50 Mass.App.Ct. 672, 677 (2001).[6] Thus, the four-year limitations period in G.L.c. 260, §5A governs the 176D claims and summary judgment is inappropriate.[7]
II. Defendant’s Motion for Summary Judgment on the Coverage Issues
Defendant has also moved for summary judgment (i) on all plaintiffs’ claims except the claim for damage to the imploded tank and (ii) on paragraphs (a), (b), (e) and (f) of its prayer for relief in the counterclaim. Defendant argues that no coverage exists for most of plaintiffs’ claims.
The principles governing interpretation of insurance policies are well settled. Interpreting the provisions of an insurance contract is a question of law. See Noel v. Metropolitan Property & Liability Ins. Co., 41 Mass.App.Ct. 593, 595 (1996). Insurance contracts *673 are to be construed according to the fair and reasonable meaning of the words in which the agreement of the parties is expressed. Cody v. Connecticut General Life Insurance Co., 387 Mass. 142, 146 (1982) (omitting citations). A policy “whose provisions are plainly and definitely expressed in appropriate language must be enforced in accordance with its terms.” Id. In making this determination, the court interprets the written contract as a whole. Starr v. Fordham, 420 Mass. 178, 190 (1995). Every word of a contract is to be given force if practicable, and “no part of the contract is to be disregarded.” Id.
With this standard in mind I turn to defendant’s separate arguments. Defendant argues that plaintiffs lack coverage for lost income or continuing business expenses. Defendant relies on a provision on the fourth page of the policy, which in relevant part provides:
3. Insuring Provision — In consideration of the provision and stipulations herein or added hereto and of the premium specified on Page 1 of this policy, this Company, for the period specified on Page 1 at location(s) specified to an amount not exceeding the amount(s) specified on Page 1, does insure the Insured named and legal representatives, to the extent of the actual cash value of the property at the time of the loss, but not exceeding the amount, which it would cost to repair or replace the property with material of like kind and quality within a reasonable time after such loss, without allowance for any increased cost of repair or reconstruction by reason of any ordinance or law regulating construction or repair and without compensation for loss resulting from interruption of business or manufacture, nor in any event for more than the interest of the Insured, against all direct loss by fire, lightning, and by removal from premises endangered by the perils insured against in this policy, except as hereinafter provided, to the property described on page 1 while located or contained as described on Page 1, or pro rata for 5 days at each proper place to which any of the property shall necessarily be removed for preservation from the perils insured against in this policy, but not elsewhere.
Under the express language of this provision, there is no coverage for loss from interruption of business. The provision, in large part mandated by G.L.c. 175, §99, clarifies that the insured’s coverage extends to “the actual cash value of the property at the time of the loss” but is “without compensation for loss resulting from interruption of business or manufacture." (Emphasis added.) The first page of the policy also shows that business continuation expenses are not covered.[8]
Plaintiffs’ contention that Supplemental Provision No. 4; warrants a different conclusion is mistaken. This supplemental provision entitled “Gross Earnings Insurance,” does not constitute part of plaintiffs’ contract. Page 9 of plaintiffs’ policy provides:
In consideration of the rate and premium at which this policy is written, such and so many of the following supplemental provisions apply to this policy as are indicated on Pages 1, 2 or 3 of this policy as being applicable hereto; each supplemental provision applies severally.to this policy!.]
Review of Pages 1, 2 and 3 of the policy does not indicate that Supplemental Provision No. 4 is part of plaintiffs’ coverage.[9] Review of the policy as a whole does not suggest the contrary. Therefore, I find and rule that plaintiffs are not entitled to coverage for loss attributed to interruption of their business.
Defendant also contends that no coverage exists for costs of removal of plaintiffs’ oil tank. Plaintiffs claim that because of the size and location of the imploded tank, it will be necessary to dig a trench next to the foundation wall and to cut through that foundation wall to remove and replace it. Defendant argues that no coverage exists under the “Buildings Coverage” provision in Supplemental Provision No. 15.[10] Defendant contends that while the provision provides coverage for “all risks of direct physical loss,” plaintiffs’ replacement costs incurred with the necessaiy construction to the foundation do not qualify as a direct physical loss because those costs are not proximately caused by an insured risk or cause. In reliance on Couch on Insurance 3rd, defendant argues that a “direct physical loss” requires “that the insured peril without intervention of any new or independent force, caused the injury directly and immediately, or set in motion a chain of events that ultimately resulted] in the loss.” Determination of this precise issue is unnecessary because coverage exists elsewhere in the policy, specifically in Insuring Provision No. 3 and Supplemental Provision No. 15.
Insuring Provision No. 3 provides that plaintiffs are entitled to coverage “to the extent of the actual cash value of the property at the time of the loss, but not exceeding the amount, which it would cost to repair or replace the material of like kind and quality within a reasonable time after such loss . ..” (emphasis added). Supplemental Provision No. 15 contains a paragraph entitled “Building Coverage” which includes coverage for foundations and “all property fastened to and made part of the building.” This paragraph provides:
Such insurance shall include the basic structure and additions, including foundations (except as hereinafter excluded); insurance hereunder is extended to cover personal property of the Insured as landlord used for the maintenance or services of the described building(s) and including fire extinguishing apparatus, floor coverings, refrigerating, ventilating, cooking, dishwashing and laundering equipment, signs, awnings, shades, screens and outdoor furniture (but not including other personal property in apartments or rooms furnished by the insured as landlord), wherever on the premises; and all property fastened to and made a part of the building.
*674 The oil tank, located in plaintiffs’ basement, constitutes either a “basic structure" or an “addition” within the meaning of the provision. The tank is built into the realty and fastened to the building, thereby within the provision of the policy designated for “property fastened to and made a part of the building.”
Supplemental Provision No. 14 provides: “Coverage under this supplemental provision includes: A. Expense incurred in the removal of debris of property covered occasioned by loss insured against in this supplemental provision . . .” This provision defines “properly” as property “usual to the conduct of the Insured’s business.” Plaintiffs’ tank and its surrounding property constitute property “usual to the conduct of [plaintiffs quick lube and automotive services business].” Another provision, entitled “When Loss Payable,” on the last page before the Supplemental Provisions also discusses removal and. replacement of damaged property.[11]
Read together in their ordinary and reasonable meaning, the provisions noted above establish that the coverage includes removal of the damaged tank and other debris, including parts of the foundation necessary for replacement of the new tank. Construing the policy in this manner is consistent with its overall purpose and its context, where exclusions and limitations of coverage are specified.[12]
An additional principle supports my conclusion. “Assuming that [the doctrine of reasonable expectations] applies, even in the absence of ambiguity ... it is clear that the standard it imposes is an objective one.” County of Barnstable v. American Financial Corp., 51 Mass.App.Ct. 213 (2001). An objectively reasonable insured, reading the relevant provisions, would likely expect coverage for the costs of removal and replacement of a damaged oil tank. See also Aguiar v. Generali Assicurazioni Ins. Co., 47 Mass.App.Ct. 687 (1999) (“Massachusetts cases have smiled upon, even if not yet wholly embraced, the process of analyzing a provision of an insurance contract in light of the reasonable expectation of the insurance buyer").
Thus, I find and rule that plaintiffs’ policy includes coverage for the removal and replacement costs of their damaged tank.
Turning now to the 176D claim, the summary judgment materials demonstrate disputed facts with respect to whether defendant investigated plaintiffs claim promptly. Under G.L.c. 176D, §3(9)(d), an unfair settlement practice includes an insurance company’s ”refus[al] to pay claims without conducting a reasonable investigation based upon all available information.” After their November 1995 loss, plaintiffs promptly filed a report with defendant and repeatedly telephoned defendant for information on their claim. Although advised by defendant that an investigator would examine their damaged premises, no such investigator came. Defendant’s representative advised plaintiffs to exert their efforts against CWO’s insurer and dictated letters and demands for plaintiffs to pursue against that insurer. Thus, early on, defendant assumed the posture of disclaiming liability, although such denial was not explicitly conveyed to plaintiffs. Whether such conduct was reasonable and in good faith cannot be resolved on summary judgment.
Summary judgment is also inappropriate on plaintiffs’ claim that defendant failed “to effectuate a prompt, fair and equitable settlement! ] of claims in which liability is clear” under G.L.c. 176D, §3(9)(f). Liability, as used in the statute, “encompasses both fault and damages.” Clegg v. Butler, 424 Mass. 413, 421 (1997). Defendant contends that it is not liable for the damages plaintiffs seek under the insurance contract. Whether defendant’s position is in good faith is a disputed question of fact.
Plaintiff also contends that defendant breached G.L.c. 176D and 940 Code Mass. Reg.[13] by failing to notify them of renewal changes in their policy. Defendant contends that plaintiffs have no expectation of proving this claim because other allegations in their complaint directly contradict this assertion. A review of the complaint confirms defendant’s position. Paragraphs 19 and 20 state:
On various occasions this policy of insurance was renewed upon request by the plaintiffs providing the same coverage to the plaintiffs in the immediately prior policy. The policies in effect on November 22, 1995 were renewed upon the request of the plaintiffs with the same coverage in the immediate prior policy including property damage coverage.'
Since plaintiffs offer no evidence in their summary judgment materials to support their claim that defendant failed to advise them of policy changes, summary judgment is warranted.
Plaintiffs also claim that defendant failed to provide them promptly with a copy of their insurance policy. That claim fails because plaintiffs, by their own admission, received the policy in March 1996, well within the statutory period to file their claim.
In light of my rulings above, summary judgment is appropriate on prayers (a) and (b) of the counterclaim but not (e) or (f).
ORDER
For the foregoing reasons, defendant’s summary judgment motion on statute of limitations grounds is ALLOWED as to Count I and DENIED as to Count II. Defendant’s summary judgment motion on coverage issues is:
(1) DENIED as to plaintiffs’ claim that defendant failed “to pay claims without conducting a reasonable investigation based upon all available information” under G.L.c. 176D, §3(9)(d);
(2) DENIED as to plaintiffs’ claim that defendant failed “to effectuate a prompt, fair and equitable settlement!] of claims in which liability is clear” under G.L.c. 176D, §3(9)(f);
*675 (3) ALLOWED as to plaintiffs’ claim that defendant breached G.L.c. 176D and 940 Code Mass. Reg. by-failing to advise of renewal changes in their policy; and
(4) ALLOWED as to plaintiffs’ claim that defendant breached G.L.c. 176D and 940 Code Mass. Reg. by failing to provide promptly a copy of the insurance policy.

 Defendant submitted a copy of the policy and an affidavit from a Senior Examiner stating the following, “Attached hereto are true copies of the declarations page and policy forms, including endorsements, comprising the policy issued to the Plaintiffs.”

 The limitations language contained within plaintiffs’ policy is identical to the statutory provision. That language is contained within the policy’s provision entitled “Suit” which provides in relevant part:
No suit or action against this Company for the recovery of any claim by virtue of this policy shall be sustained in any court of law or equity in this commonwealth unless commenced within two years from the time the loss occurred; provided, however, that if, within said two years, in accordance with the provisions of the preceding paragraph, the amount of the loss shall have been referred to arbitration after failure of the parties to agree thereon, the limitation of time for bringing such suit or action shall in no event be less than ninety days after a valid award has been made upon such reference or after such reference or award has been expressly waived by the parties.
(Emphasis added.)

 Plaintiffs’ loss occurred in or around November 1995 and thus the limitations period expired in November 1997. They did not file this action until November 19, 1999.

 In Cramer, Judge Hely stated:
The discovery rule does not apply to the statute of limitations in G.L.c. 175, §99, Twelfth. Under the terms of the statute, this limitations period begins to run “at the time the loss occurred." Ames Privilege Associates v. Allendale Mutual Ins. Co., 742 F.Sup. 700, 702-03 (D.Mass. 1990). This contrasts with the other limitation statutes which start the clock when “the cause of action accrues.” G.L.c. 260, §1, 2, 2A.

 But see Nunheimer v. Continental Ins. Co., 68 F.Sup.2d 75 (D.Mass. 1999) (two-year statute of limitations period applies and not c. 93A’s four-year statutory period).

 As the Appeals Court stated in Schwartz, ‘The alternate reading would make meaningless the specific inclusion of c. 176D actions in c. 260, §5A, since all claims against the insurer, even those under c. 176D, if viewed broadly, can be seen as claims brought ‘by virtue of the policy.’ ” Id.

 On this declarations page, the required notation, “Included,” is not stated next to the term “BCE” (Business Continuing Expense).

 These pages in fact make no mention of Supplemental Provision No. 4.

 Review of Page 1 indicates that Supplemental Provision No. 15 applies as part of plaintiffs’ policy.

 In relevant part, that provision states:
In case of any loss or damage, the Company within thirty days after the Insured shall have submitted a statement, as provided in the preceding clause, shall either pay the amount for which it shall be liable, which amount if not agreed upon shall be ascertained by award of referees as hereinafter provided, or replace the property with other of the same kind or goodness, or it may, within fifteen days after such statement is submitted notify the Insured of its intention to rebuild or repair the premises, or any portion thereof separately covered by this policy, and shall thereupon enter upon said premises and proceed to rebuild or repair the same with reasonable expedition.

 Because it is unclear from the summary judgment record whether plaintiffs’ policy includes Endorsement No. 610, entitled “Value Protection,” which amends Supplemental Provision No. 15, it does not factor into my analysis.

 The complaint does not identify the specific regulation under which plaintiffs base their claim.