Leibensperger, Edward P., J.
Plaintiff Karl Nurse is the owner of a multi-unit residence at 294 Shawmut Avenue in Boston, Massachusetts (the “property”). Defendant Omega US Insurance, Inc. (and its successor-in-interest Canopius US Insurance, Inc., hereinafter “Omega”) issued an insurance policy for the property. In December 2009, the property suffered significant water damage from a leaking pipe. Omega denied coverage and Nurse brought this suit for coverage under the policy. Omega now moves for summary judgment on three alternative grounds: (1) Nurse’s claim is barred by the applicable statute of limitations, (2) Nurse failed to meet the conditions precedent for coverage, and (3) Omega has demonstrated the applicability of a policy exclusion. As will be described below, resolution of the statute of limitations issue is dispositive such that Omega’s motion for summary judgment will be allowed.[1]
BACKGROUND
The following facts are undisputed. Omega insured Nurse pursuant to a “dwelling” policy with respect to the property. The policy insured against losses to the property arising from specified perils for the period from April 27, 2009, to April 27, 2010. The parties appear to agree that the policy was subject to the requirements of G.L.c. 175, §99, which sets forth standard terms that must be included in all fire insurance policies in the Commonwealth. Under that statute, and pursuant to the language of the policy, *692 there is a two-year statute of limitations for any claims arising under the policy.
The property, which contains three living units, was entirely unoccupied for a lengthy period of time up to and including December 2009. Construction work was in progress in Unit 3 of the property in December 2009. Nurse had informed Omega that the property would be vacant during the policy’s coverage period. The policy consequently included additional provisions requiring Nurse to either shut off the building’s water supply and blow out all internal plumbing, or ensure that the heating system was set to at least fifty-five degrees (55 F). The parties dispute the nature of these additional requirements. Nurse characterizes them as exclusions, while Omega characterizes them as conditions precedent.
In December 2009, the water supply to Unit 3 (the third-floor unit) was active because of the ongoing construction work at the property. Nurse concedes that he does not know precisely what temperature had been set at that time by the thermostats in any of the property’s three units. Electricity usage records from the property’s three units indicate that the heating systems did not operate during the relevant time. Nurse maintains, however, that he left an electric space heater in the front hallway of the property to maintain a minimum level of heating. Nurse further avers that this heating unit was on a separate electrical circuit from any of the residential units, and was therefore not taken into account in Omega’s investigation and subsequent denied of coverage.
December 17 and 18, 2009, were extremely cold days, with daily highs reported at Logan Airport of twenty-six (26 F) and twenty eight (28 F) degrees respectively. December 19, 2009, had a reported daily high (at Logan airport) of thirty-two degrees (32 F). Boston Water & Sewer Commission records for the property indicate that the rate of water usage drastically increased on the afternoon of December 19, 2009. Between December 1 and December 18, 2009, approximately fifteen (15) cubic feet of water were consumed. Beginning on the afternoon of December 19, however, the rate of consumption increased to approximately two hundred sixty (260) cubic feet every six (6) hours. This increased rate of consumption continued until December 28, 2009. In total, more than eight thousand (8,000) cubic feet of water were released in the property between December 19 and 28, and the building suffered substantial water damage. Subsequent investigation revealed that a soldered joint of a copper pipe supplying water to the kitchen sink in Unit 3 had failed. According to the same investigation, there was no indication of rust, corrosion, or any other structural defect in the pipe or the joint. Nurse asserts that he found a sliding door open in Unit 3 on December 28, 2009, and speculates that it may have been left open by the contractors performing work in the building
On December 28, 2009, Nurse was notified by Boston Water & Sewer Commission of the increased rate of water consumption. He visited the property that day, discovered the leak and resulting water damage, and shut off the property’s water supply.[2] Nurse ultimately filed an insurance claim with Omega. After a year of investigation, Omega formally denied coverage on January 14, 2011.[3] Nurse then filed this action on December 28, 2011.
DISCUSSION
The threshold that Nurse’s claim must clear is the statute of limitations. Omega asserted the statute of limitations in its first responsive pleading. The applicable statute, G.L.c. 175, §99, states “[n]o suit or action against [an insurer] for the recovery of any claim by virtue of this [standard form] policy shall be sustained in any court of law or equity in this commonwealth unless commenced within two years from the time the loss occurred.” The cognate policy language states “[n]o action can be brought unless the policy provisions have been complied with and the action started within two years after the date loss or damage occurs.”
The operative dates are as follows. The loss occurred to the property on December 19, 2009, when the undisputed factual record demonstrates that water usage spiked to such a level as to cause water damage to the property. The extreme amount of water usage and damage continued for the next several days until December 28, 2009. At oral argument, it was conceded by plaintiff that flooding occurred on December 19, 2009. Plaintiff did not commence this action until December 28, 2011.
With respect to a statute of limitations defense, once a defendant establishes that an action is commenced beyond the applicable time period allowed by the statute, the burden falls to the plaintiff to prove facts that would take the case outside the bar of the statute of limitations. Silvestris u. Tantasqua Regional School District, 446 Mass. 756, 766-67 (2006). In Massachusetts, the “discoveiy rule” operates to toll the statute of limitations for certain types of claims until the claimant discovered, or reasonably should have discovered, the damage. Felton v. Labor Relations Comm'n, 33 Mass.App.Ct. 926, 927 (1992). In the present case, Nurse contends that the discovery rule should apply and that he could not reasonably have discovered the water damage until December 28, 2009. As a result, Nurse argues that his action is timely.
Omega asserts that the discoveiy rule is a tort law doctrine that is not applicable to a contractual claim arising from an insurance policy under c. 175, §99. Omega notes the difference in the language between the statutes of limitation under which a discovery rule has been recognized and the strict language of c. 175, §99. For example, G.L.c. 260, §2A requires that an action in tort for personal injuries must be commenced *693 within three years “after the cause of action accrues.”[4] By contrast, c. 175, §99 requires a claim to be commenced within two years from the time “the loss occurred.”
The Supreme Judicial Court and the Appeals Court have not addressed whether a discoveiy rule should be applied to the statute of limitations in c. 175, §99. The plain language of the statute, however, requires determination of when the “loss occurred” as opposed to the more nuanced determination of when a cause of action accrues. Section 99 does not provide any additional definition of what constitutes “loss” for purposes of the statute of limitations. Nevertheless, courts consistently view the word “loss” as meaning the incident that causes damage to the properly. J.&T. Enterprises, Inc. v. Liberty Mutual Ins. Co., 384 Mass. 586, 587 (1981) (under §99, loss occurred on date of fire causing damage; no evidence of when insured knew of loss); Gray Excavation, Inc. v. Acadia Insurance Co., 2008 WL 496645 (Mass.Super.Ct. 2008) (Lemire, J.) [23 Mass. L. Rptr. 497]; McGrail Associates, Inc. v. Universal Underwriters, Inc., 2001 WL 1470720 (Mass.Super.Ct. 2001) (Hinkle, J.) [13 Mass. L. Rptr. 670]; Cramer v. Charter Oak Fire Ins. Co., 1997 WL416587, at *2 (Mass.Super.Ct. 1997) (Hely, J.). See also, Nunheimer v. Continental Insurance Co., 68 F.Sup.2d 75, 78 (D.Mass. 1999) (Young, C.J.) (summary judgment for insurer where release of contaminants occurred more than two years before suit filed). Because it is beyond dispute that damage to Nurse’s property from the release of water occurred prior to December 28, 2009, the “loss” under the policy was prior to that date. Thus, Nurse filed suit too late.[5]
ORDER
For the foregoing reasons, plaintiff Karl Nurse’s claim is barred by the statute of limitations under G.L.c. 175, §99 and the policy. Defendant Omega US Insurance, Inc.’s motion for summaiy judgment is ALLOWED. Judgment to enter for the defendant.

Because the statute of limitations bars the action, the court will not address the other arguments advanced by defendant.

Nurse concedes that he also entered the property on December 21, 2009, but avers that he only entered the front hallway, and did not enter Unit 3, where the water leak occurred.

The denial letter was erroneously dated “January 14, 2010."

See also G.L.c. 260, Section 4, actions for malpractice must be commenced within three years “after the cause of action accrues.”

Even if a discoveiy rule applied to Nurse’s claim, it is likely the claim ultimately would be barred. The discoveiy rule starts the running of the statute of limitations when a claimant reasonably should know of his loss. Nurse visited the premises on December 21, 2009, but claims he did not see the damage. The policy required Nurse to inspect the vacant property on a weekly basis (“You, or a responsible adult appointed by you, must inspect the dwelling on a weekly basis to ensure that there are no visible signs of loss or damage to the insured property . . A jury would likely conclude that Nurse should have been aware of the damage by no later than December 21, 2009.