PATRICIA M. CORRELLAS & another[1] vs. MICHELLE B.
VIVEIROS.

Bristol. December 6, 1990. - June 5, 1991.

Present: LIACOS, C.J., ABRAMS, NOLAN, O'CONNOR, & GREANEY, JJ.

*Practice, Civil*, Summary judgment. *Libel and Slander. Malicious Prosecution. Emotional Distress.*

On a motion for summary judgment in a civil action, a certified transcript
of a prior criminal proceeding, containing parties' sworn testimony
bearing on the matter at hand, could properly be considered by the
judge in determining whether there was any genuine issue of material
fact. [316-318]

On a claim for malicious prosecution, summary judgment was properly
ordered for the defendant, where her statements to police accusing the
plaintiff of planning with her to steal money from the bank where both
were employed, which were made while the defendant was herself a
suspect in a theft already under investigation, did not, as matter of law,
constitute the initiation of criminal proceedings against the plaintiff.
[318-319]

Where a bank employee, while under investigation in connection with a
theft of money from the bank, made statements to police accusing a
coworker of planning with her to steal from the bank, her statements
were absolutely privileged as having been made in the context of a con-
templated criminal proceeding and could not support the coworker's
claim for defamation. [319-324]

Statements which, by reason of absolute privilege, could not support a
claim for defamation provided no basis for liability on a claim for in-
tentional infliction of emotional distress. [324]

Where summary judgment was entered for the defendant on a wife's
claims for malicious prosecution, defamation, and intentional infliction
of emotional distress, her husband's loss of consortium claim, which
was dependent on the other claims, was properly dismissed. [324-325]

[1]Robert Correllas.

CIVIL ACTION commenced in the Superior Court Department on April 9, 1987.

The case was heard by *George Jacobs*, J., on a motion for summary judgment.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Thomas F. McGuire, Jr.*, for the plaintiffs.

*Clement Brown* for the defendant.

NOLAN, J. This case arises from allegedly false statements made about Patricia M. Correllas (plaintiff) by Michelle Viveiros to police officers during the course of a criminal investigation. The plaintiff brought this action, alleging malicious prosecution, defamation, and intentional infliction of emotional distress. The judge granted summary judgment in favor of the defendant because (1) the defendant did not, as a matter of law, institute criminal proceedings against the plaintiff as required for malicious prosecution; (2) the statements were absolutely privileged, and thus could support neither a defamation action nor an intentional infliction of emotional distress claim, and (3) the plaintiff had failed to demonstrate that there was a genuine issue of material fact in connection with the elements of the tort of intentional infliction of emotional distress. We now affirm the granting of summary judgment.

In August, 1986, the plaintiff was a vault teller at the Fall River branch of the Durfee-Attleboro Bank. The defendant was her assistant. On or about October 15, 1986, officials of the bank discovered that $8,000 was missing from the Fall River branch vault. Both women were questioned by police officers with regard to the missing funds. After being informed by police of the results of a polygraph examination, Viveiros confessed to stealing $4,000. She further told police that Correllas had conceived the plan to steal the money, and that she was of the belief that Correllas had stolen the additional $4,000. Correllas was then charged with larceny. After a trial at which Viveiros testified against Correllas, Correllas was acquitted.

Correllas and her husband then brought this action for malicious prosecution, intentional infliction of emotional distress, defamation, and loss of consortium. Viveiros moved for summary judgment, supporting her motion with three affidavits, one from herself, one from the investigating police officer, and one from the assistant district attorney. These affidavits briefly described the conversations with the police and stated the reasons that the criminal charges had been brought against Correllas. Correllas presented no affidavits, but rather supplied the court with a certified transcript of the criminal trial. The transcript contained Correllas's sworn testimony that she had no knowledge of the theft and had never planned any such action. The judge granted summary judgment on all counts.

As a preliminary matter, we must determine what materials were properly before the judge on the motion for summary judgment. Rule 56 (c) of the Massachusetts Rules of Civil Procedure, 365 Mass. 824 (1974), states summary judgment shall be entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Viveiros argues that, because transcripts of prior testimony are not among the materials explicitly mentioned in rule 56 (c), the transcript offered by Correllas should not be considered in determining whether there exists a genuine dispute as to any material fact.[2] We disagree.

The purpose of summary judgment is to decide cases where there are no issues of material fact without the needless expense and delay of a trial followed by a directed verdict. See *Cassesso* v. *Commissioner of Correction*, 390 Mass. 419, 422 (1983); *Kesler* v. *Prichard*, 362 Mass. 132, 134 (1972). To that end, "all doubt as to the existence of a genu-

---

[2]It is unclear whether the judge considered the transcript. His memorandum of decision refers at several points to the lack of any affidavits in opposition to the motion.

ine issue of material fact must be resolved against the party moving for summary judgment." *Attorney Gen.* v. *Bailey*, 386 Mass. 367, 371, cert. denied sub nom. *Bailey* v. *Bellotti*, 459 U.S. 970 (1982), quoting *Gross* v. *Southern Ry.*, 414 F.2d 292, 297 (5th Cir. 1969). Of course, when a motion for summary judgment is made and properly supported, the non-moving party may not simply rest on pleadings, "but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Mass. R. Civ. P. 56 (e), 365 Mass. 824 (1974).

The certified transcript of the prior criminal trial may not qualify as an affidavit as we have previously defined that term. *Galvin* v. *Town Clerk of Winchester*, 369 Mass. 175, 177 (1975). However, we have never been overly technical in our reading of what a judge should consider on a motion for summary judgment. In *Rutland* v. *Fife*, 385 Mass. 1010 (1982), we considered a letter as part of the record on summary judgment. In *Jackson* v. *Longcope*, 394 Mass. 577, 580 n.2 (1985), we noted that "[i]t is proper on a motion for summary judgment to recognize those facts of which a judge may take judicial notice, including criminal cases involving a party." In *Makino U.S.A., Inc.* v. *Metlife Capital Credit Corp.*, 25 Mass. App. Ct. 302, 318 n.6 (1980), the Appeals Court stated that "[t]estimony received in court may be considered on summary judgment motions . . . ."

None of these sources — letters, judicial notice, and in-court testimony — is specifically referred to in rule 56, yet we held their consideration on the question of summary judgment to be proper.[3] Similarly, a certified transcript of a prior criminal trial containing sworn statements of parties bearing

---

[3]The Federal courts have been similarly liberal in directing the judge to consider all relevant, potentially admissible materials in making a determination as to whether there is a genuine dispute as to a material fact. In *Whitaker* v. *Coleman*, 115 F.2d 305, 307 (5th Cir. 1940), the court held that a transcript of testimony in a former trial was admissible for summary judgment purposes. See *Western Land Corp.* v. *Crawford-Merz*, 62 F.R.D. 550, 553 (D. Minn. 1973).

on the matter at hand ought to be considered by the judge in determining whether there are any triable issues in the case.[4] We shall, therefore, review the various counts taking into consideration the transcript and the sworn statements contained therein.

1. *Malicious Prosecution.*

Correllas first claims that Viveiros's actions constituted malicious prosecution. To prove malicious prosecution, Correllas must show that Viveiros instituted criminal proceedings against her with malice and without probable cause and that those proceedings terminated in favor of Correllas. *Beecy* v. *Pucciarelli,* 387 Mass. 589, 593-594 (1982). Viveiros argues that she did not "institute the proceedings" against Correllas merely by telling police officers of the alleged plan to steal the money. In support of this, she offers her affidavit and the affidavits of the police officer and the district attorney. These latter two affidavits state they brought charges against Correllas based on Viveiros's statements "and *other* information" (emphasis in the original).

It is well established that a person need not swear out a criminal complaint in order to be held answerable for malicious prosecution. "The fact that . . . the chief of police signed and swore to the written complaint does not save the defendant if he intentionally induced the police to do so, acting in good faith on the defendant's information." *Tangney* v. *Sullivan,* 163 Mass. 166, 167 (1895). See *Seelig* v. *Harvard Coop. Soc'y,* 355 Mass. 532, 536 (1969); *Witham* v. *Gregory & Read Co.,* 243 Mass. 595, 597 (1923). However, the defendant must have, in some sense, initiated the prosecution. The mere transmission of information to a police officer, who using his or her independent judgment, then pursues the matter and institutes criminal proceedings, has never been held sufficient to support an action for malicious prosecution.

---

[4]The better practice certainly would have been for Correllas to file the transcript through an appropriate affidavit, and the judge would have been warranted in demanding such an affidavit before considering the motion. If the proffered evidence apprises the judge of a genuine dispute of material fact, however, dismissal is too high a price to impose on a litigant.

See *Burnham* v. *Collateral Loan Co.*, 179 Mass. 268, 274 (1901); *Ziemba* v. *Fo'cs'le, Inc.*, 19 Mass. App. Ct. 484, 485, 486 (1985).

In this case, Viveiros provided information to police while she was a suspect in a theft already under investigation. The prosecutor, in his affidavit, stated that, "[a]t no time did Ms. Viveiros come forward of her own free will and offer information concerning the missing money." The plaintiff offered no evidence to the effect that Viveiros encouraged or demanded that police institute criminal proceedings against Correllas. The entry of summary judgment on the malicious prosecution count, therefore, was proper because the undisputed evidence showed that Viveiros did not institute the criminal proceedings against Correllas.

*2. Defamation.*

Correllas next claims that Viveiros defamed her by accusing her of complicity in the theft. Defamation is the publication of material by one without a privilege to do so which ridicules or treats the plaintiff with contempt. See *Merrill* v. *Post Publishing Co.*, 197 Mass. 185, 191-192 (1908). Although criminal accusations are generally regarded as defamatory, see *Stone* v. *Essex County Newspapers, Inc.*, 367 Mass. 849, 853 (1975), Viveiros argues that any such accusations were made in circumstances rendering them absolutely privileged. Correllas argues that at least some of the defamatory statements were made in circumstances rendering them only conditionally privileged, and that Viveiros lost that privilege through abuse.

Statements made in the course of a judicial proceeding which pertain to that proceeding are, of course, absolutely privileged and cannot support a claim of defamation, even if uttered with malice or in bad faith. *Seelig* v. *Harvard Coop. Soc'y*, 355 Mass. 532, 538 (1969). Therefore, no action will lie in relation to the testimony of Viveiros at the criminal trial of Correllas.

Viveiros, however, admitted in her affidavit to making arguably defamatory statements to the police officer and the prosecutor during the course of the investigation of the

crime, prior to the institution of formal judicial proceedings. The officers were interrogating Viveiros during their investigation of the theft. She was a suspect in that crime. Viveiros told the officers that she and Correllas had planned to steal money from the vault, that she had taken $4,000 and assumed that the additional $4,000 was stolen by Correllas pursuant to their plan. Correllas testified at her criminal trial that she had neither stolen any money nor ever discussed with Viveiros the prospect of taking money from the vault. If a jury were to believe Correllas, they could conclude that Viveiros intentionally lied to police when she made the accusations. We are asked to decide whether these statements are absolutely privileged. We hold that they are.

It is well established that statements made by a witness or party during trial, if "pertinent to the matter in hearing," are protected with an absolute privilege against an action for defamation. See *Aborn* v. *Lipson*, 357 Mass. 71, 72 (1970); *Mezullo* v. *Maletz*, 331 Mass. 233, 236 (1954); *Sheppard* v. *Bryant*, 191 Mass. 591, 592 (1906); *Laing* v. *Mitten*, 185 Mass. 233, 235 (1904). Important policy reasons underpin this long-standing rule. An absolute privilege is favored because any final judgment may depend largely on the testimony of the party or witness, and full disclosure, in the interests of justice, should not be hampered by fear of an action for defamation. See Restatement (Second) of Torts, § 588 comment a (1977). "[I]t is more important that witnesses be free from the fear of civil liability for what they say than that a person who has been defamed by their testimony have a remedy." *Aborn, supra* at 72. A conditional or qualified privilege does not adequately protect a witness or party because he or she may still have to go to court to prove the absence of malice or recklessness. "[T]he privilege would afford small comfort . . . if there was a possibility that [the witness] would be subjected in every instance to an inquiry as to his motives." *Mezullo, supra* at 237.

An absolute privilege, and the policy considerations supporting it, may, in appropriate circumstances, apply to statements made before trial. Under Massachusetts law, state-

ments made to police or prosecutors prior to trial are absolutely privileged if they are made in the context of a proposed judicial proceeding. See *Sriberg* v. *Raymond,* 370 Mass. 105, 108 (1976); *Kipp* v. *Kueker,* 7 Mass. App. Ct. 206, 210-212 (1979); J.R. Nolan & L.J. Sartorio, Tort Law § 130, at 196-197 (1989). See also Restatement (Second) of Torts, *supra* at §§ 587, 588 & 598 comment e; W. Prosser & W. Keeton, Torts § 114, at 819-820 (5th ed. 1984).

In the *Sriberg* case, for example, an attorney mailed a letter to the plaintiff in which the attorney accused the plaintiff of misconduct and threatened an action against the plaintiff. A copy of the letter was sent to the plaintiff's bank. The plaintiff sued, claiming that the letter was defamatory. We held that the statements in the attorney's letter were absolutely privileged because the attorney's letter was written in the context of the institution of judicial proceedings. "We have hitherto held that statements by a party, counsel, or witness *in the institution of,* or during the course of, *a judicial proceeding* are absolutely privileged provided such statements relate to that proceeding" (emphasis added). *Id.* at 108.

The *Kipp* case furnishes another illustration. The plaintiff claimed that the defendants had slandered him in a conversation with a district attorney by accusing him of committing larceny. Because it was not apparent that the statements "were made in preparation for, or preliminary to, a proposed judicial proceeding," the Appeals Court held that the complaint could not be dismissed on motion under Mass. R. Civ. P. 12 (b) (6), 365 Mass. 754 (1974). *Id.* at 210. As the court noted: "The statement of the claim [was] such that it could be read to concern statements outside of the context of a contemplated criminal action." *Id.* The decision indicated, however, that, if the complaint clearly indicated that the statements had been made in the context of a contemplated criminal action, an absolute privilege would attach. Additionally, the plaintiff in the *Kipp* case claimed that the defendants had slandered him when they applied to a District Court clerk for the issuance of a criminal complaint. The Appeals

Court indicated that such an application involves a form of judicial proceeding and that statements made therein are absolutely privileged.[5] *Id.* at 211-212.

In contrast to these cases, there are many cases which hold that the report of a crime is only conditionally privileged. In most of those cases, however, the defendants went to the police, or communicated with others, on their own initiative and published an accusation which might otherwise never have been known. See, e.g., *Seelig* v. *Harvard Coop. Soc'y*, 355 Mass. 532, 537-538 (1969) (store initiated investigation which led to criminal complaint against plaintiff); *Galvin* v. *New York, N.H. & H.R.R. Co.*, 341 Mass. 293 (1960) (defendant's employee accused plaintiff, in front of several other people, of stealing); *Pihl* v. *Morris*, 319 Mass. 577, 581 (1946) (defendant told police that plaintiff had stolen a dishwashing machine and made a formal complaint for larceny); *Pion* v. *Caron*, 237 Mass. 107, 110 (1921) (plaintiff was discharged by defendant store owner and then charged with stealing merchandise); *Zinkfein* v. *W.T. Grant Co.*, 236 Mass. 228 (1920) (defendant's detective accused plaintiff, in front of a police officer, of stealing merchandise from store); *Robinson* v. *Van Auken*, 190 Mass. 161, 166 (1906) (defend-

---

[5]Further, as has been indicated, the Restatement (Second) of Torts also recognizes that some communications made by witnesses or parties preliminary to, or in the institution of, a proposed judicial proceeding ought to be absolutely privileged.

Restatement (Second) of Torts § 587, provides: "A party to a private litigation or a private prosecutor or defendant in a criminal prosecution is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding, or in the institution of or during the course and as a part of, a judicial proceeding in which he participates, if the matter has some relation to the proceeding."

Restatement (Second) of Torts § 588, provides: "A witness is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding or as a part of a judicial proceeding in which he is testifying, if it has some relation to the proceeding."

See also Restatement (Second) of Torts § 598 comment e ("Formal or informal complaints to a prosecuting attorney or other law enforcement officer concerning violations of the criminal law are absolutely privileged under the rule stated in § 587").

ant called a police officer to his store and made an accusation of larceny against the plaintiff in officer's presence); *Brow* v. *Hathaway*, 13 Allen 239, 242-243 (1867) (defendant went to police and initiated an investigation).[6] The key to understanding these cases lies in the fact that, when the defendants made the allegedly defamatory statements, no criminal action or judicial proceeding was then being contemplated or proposed. As a consequence, the defendants could not reasonably argue that they were entitled to the protection of an absolute privilege.

Situations like the present one, which appears to be somewhere on the borderline between unsubstantiated reports of criminal activity and statements made in the course of proposed judicial proceedings, should be considered on a case-by-case basis. See *Devlin* v. *Greiner*, 147 N.J. Super. 446, 460 (1977). A careful, fact-specific analysis will better balance the right of a plaintiff to preserve his or her reputation from defamatory accusations, with the right of society to secure the testimony of a witness in proposed and in actual judicial proceedings without the party or witness laboring under the threat of a civil law suit.

An absolute privilege was appropriately applied in this case because police and prosecutors were contemplating a criminal action when the defendant made the allegedly de-

---

[6]The only relevant case involving a conditional privilege where the defendant did not initiate an investigation of the plaintiff is *Hutchinson* v. *New England Tel. & Tel. Co.*, 350 Mass. 188 (1966). In that case a telephone operator employed by the defendant had received a bomb threat call and telephoned the police. The police then phoned the operator back and asked whether the plaintiff's voice was the voice that made the bomb threat. The operator incorrectly identified his voice as that of the caller. We held that the operator was not liable to the plaintiff for defamation because her identification was subject to a conditional privilege, and she did not act wantonly or recklessly. There was no issue in the case, however, of whether the privilege was absolute or conditional. We merely assumed that it was conditional. "We assume that [the operator's] statements to the police amount to the charge of a crime against the plaintiff, and constituted slander for which she and the company might be liable. These statements were conditionally privileged." *Id.* at 191. Because the issue of an absolute, as distinguished from a conditional, privilege was not discussed in the case, it has little precedential value.

famatory statements. It is undisputed that, before the defendant made her statements, the bank had suspended both the plaintiff and the defendant from work, the police had extensively questioned both the plaintiff and the defendant, and a polygraph test had been administered to the defendant by police investigators. The facts clearly indicate that, when the defendant made her statements, a criminal investigation of the theft from the bank was well under way, and a prosecution was being contemplated. See *Kipp, supra* at 210. In addition, it was obvious that the defendant would be either a witness or one of the accused in the criminal case. By implicating the plaintiff, the defendant knew that she would have to repeat her accusations at the plaintiff's trial, and do so under oath, subjecting herself to possible perjury charges for any false testimony. Affording the defendant an absolute privilege in these circumstances is justified because the final judgment in the criminal prosecution would necessarily be based on the defendant's testimony. That testimony, and the statements leading up to it, are part of a continuous transaction where disclosure should occur without fear of a civil action for defamation. See Restatement (Second) of Torts *supra*, at § 588 comment a.

Summary judgment was therefore properly entered in favor of Viveiros on the defamation claim.

3. *Intentional Infliction of Emotional Distress.*

Because the statements which form the basis of Correllas's claim for intentional infliction of emotional distress were made in circumstances rendering them absolutely privileged, that claim must also fail. A privilege which protected an individual from liability for defamation would be of little value if the individual were subject to liability under a different theory of tort. Summary judgment on the intentional infliction of the claim for emotional distress was properly entered.

4. *Loss of Consortium.*

Summary judgment was also granted on the claim of Robert Correllas for loss of consortium. The judge ruled that, because all of Patricia Correllas's claims had been dismissed, the loss of consortium claim, which was dependent on the

other claims, must also fail. Because we affirm summary judgment with respect to Patricia Correllas's claims, the summary judgment on the loss of consortium claim is also affirmed.

*Judgment affirmed.*