# DECISIONS

## OF THE

## APPEALS COURT

## OF

## MASSACHUSETTS

---

ROBERT C. DAY vs. GREGORY KERKORIAN.

No. 07-P-174.

Worcester. January 17, 2008. - June 6, 2008.

Present: McHUGH, ARMSTRONG, & MEADE, JJ.

*Contract,* Interference with contractual relations. *Consumer Protection Act,*
Unfair or deceptive act. *Limitations, Statute of. Practice, Civil,* Statute of
limitations. *Privileged Communication. Damages,* Insurance cancellation.

In a civil action for intentional interference with contractual relations brought
in Superior Court against the defendant insurance agent in circumstances
where the insurance company declined to cover the plaintiff's disability
claim based on the plaintiff's failure to cancel a previously acquired policy
from another insurance company — which policy the plaintiff understood
that the defendant would cancel for him when the plaintiff purchased
through him a replacement policy — the judge properly entered summary
judgment in favor of the defendant, given that the statute of limitations
embodied in G. L. c. 260, § 2A, barred the action, the plaintiff having
filed his complaint more than three years after the insurer denied coverage
and more than three years after the plaintiff discovered the essence of the
defendant's alleged role in the denial of coverage. [6-7]
The judge in a civil action erred in dismissing a claim brought pursuant to

G. L. c. 93A, where, even assuming that a "litigation privilege" (which generally is a defense to defamation claims available to those who make defamatory statements while acting as witnesses in judicial proceedings) applied to the facts of the case, genuine issues of material fact persisted as to when the defendant made the relevant statements, the purpose for which they were made, and the defendant's expectation when he made them. [7-9]

The record in a civil action did not support the defendant's claim that the plaintiff would be unable to prove any damages at trial. [9]

CIVIL ACTION commenced in the Superior Court Department on February 2, 2001.

The case was heard by *Bruce R. Henry*, J., on a motion for summary judgment.

*Mary Katherine Geraghty & Christopher E. Mullady* for the plaintiff.

*Timothy O. Egan* for the defendant.

McHUGH, J. In an effort to recover damages for interference with an advantageous contractual relationship and commission of an unfair and deceptive practice, see G. L. c. 93A, § 2, Robert C. Day brought suit against Gregory Kerkorian, an insurance agent, on February 2, 2001.[1] After a period of discovery, Kerkorian moved for summary judgment dismissing the complaint. He based the motion on three contentions: the statute of limitations had run before the action was filed; the action was based on statements covered by a so-called "litigation privilege"; and Day would be unable to prove any damages at trial. A Superior Court judge agreed with the first two arguments and ordered entry of judgment in Kerkorian's favor. Day appeals. We affirm in part and reverse in part.

Viewing the facts in the light most favorable to Day, as we must in such cases, see, e.g., *Augat, Inc.* v. *Liberty Mut. Ins. Co.*, 410 Mass. 117, 120 (1991), it appears from the record that in 1987, Day purchased a disability insurance policy from Connecticut Mutual Life Insurance Company (Connecticut Mutual) with the assistance of Kerkorian, who was then a Connecticut Mutual agent. The policy provided a monthly benefit of $4,000 if Day became disabled.

---

[1] Day also named Massachusetts Mutual Life Insurance Company as a defendant in the action but that portion of the claim (count two of the complaint) was later settled and plays no role in this appeal.

Later, in 1992, Day bought another disability policy, this one from New York Life Insurance Company (New York Life) through a New York life agent whom he knew professionally. Initially, that policy was to pay $10,000 per month in the event of a disability but Day, after incurring a drop in his own income, reduced the monthly amount to $5,250. Some time after he bought the policy, however, Day learned indirectly that his New York Life agent was misusing client funds and was facing criminal charges for doing so. Unhappy about the prospect that his might be among the misused funds, he contacted Kerkorian to ask for help in replacing the New York Life policy.

Kerkorian agreed and alerted Day to a provision in his existing Connecticut Mutual policy allowing purchase of an additional $4,000 of monthly disability coverage without providing evidence of insurability. Day wanted the additional coverage so, on October 19, 1995, in Kerkorian's presence, he filled out an application for a new $4,000 policy on a Connecticut Mutual form. The application contained a handwritten notation that the New York Life policy "will be discontinued upon issue [*sic*] of new" Connecticut Mutual policy, although Day claimed that Kerkorian added the notation after Day signed the application.[2]

In any event, Day and Kerkorian expressly agreed that the new Connecticut Mutual policy would replace the New York Life policy, leaving Day with a total of $8,000 monthly coverage under the old and the new Connecticut Mutual policies. Accordingly, on or about April 23, 1996, Day signed an amendment to the application stating that cancellation would occur "within 60 days from the issue date of this policy." At the time he signed the original and amended applications, Day assumed that Kerkorian would take the appropriate steps to cancel the New York Life policy.

Unbeknownst to Day, the new Connecticut Mutual policy was issued on December 15, 1995, four months before he signed the amended application. Day continued to pay premiums on the New York Life policy through automatic electronic payments

---

[2]At his deposition in this case, however, Day testified only that he did not read the document before signing it and that Kerkorian did not add the handwritten notation while in his presence.

from his bank account but was unaware that New York Life continued to collect the premium payments.

In December, 1996, Day suffered a series of strokes that left him disabled. Accordingly, he made a claim under the two Connecticut Mutual policies and the New York Life policy. Massachusetts Mutual Life Insurance Company (MassMutual), which by then had merged with Connecticut Mutual and had succeeded to all of its rights and obligations, denied coverage under the 1995 policy, and on April 17, 1997, filed a complaint seeking a declaration that it had no liability under that policy because Day had failed to fulfil his obligation to cancel the New York Life policy. MassMutual attached to its complaint a copy of Day's application and the amendment to the application, both of which bore Day's signature.

The MassMutual complaint was followed by an exchange of correspondence between Day's attorney and the attorney MassMutual had engaged. In a letter of April 24, 1997, Day's attorney said, in essence, that Kerkorian had undertaken to cancel the New York Life policy, and that his failure to do so barred MassMutual from disclaiming coverage. To press home the point, Day's attorney said as follows:

> "If MassMutual maintains that (a) it had no *actual* knowledge that the New York Life policy was still in effect, and (b) if it had had such actual knowledge it would have rescinded the Connecticut Mutual policy, then we demand that MassMutual file a claim with Mr. Kerkorian's errors and omissions carrier" (emphasis original).

That drew a written reply from MassMutual's attorney dated May 6, 1997. The cancellation obligation, the attorney asserted, rested on Day alone. Insofar as Kerkorian's conduct was concerned, MassMutual's attorney said that,

> "Mr. Kerkorian[] does not agree either that he was instructed to discontinue the New York Life policy or that he had knowledge that the New York policy was not discontinued by . . . Day."

The exchange left matters unresolved, so Day filed an answer and counterclaim on July 18, 1997. In part, the answer alleged

that Kerkorian "told Day at the time that the application was made that he would take responsibility for canceling the New York Life policy." The counterclaim, again in part, stated that MassMutual's claims regarding invalidity of the second Connecticut Mutual policy rested "on the false allegations that Kerkorian did not take responsibility for cancelling the New York Life policy, and that Kerkorian and MassMutual did not know that the New York life policy remained in effect during the year that it accepted Day's premiums without objection." Day alleged that Kerkorian told him he, Kerkorian, "would take responsibility for canceling the disability policy" with New York Life, that Kerkorian knew the New York Life policy had not been canceled, and that Kerkorian failed to cancel the policy.[3]

Ultimately, that action proceeded to trial before a Superior Court judge sitting without a jury. The judge found that Kerkorian added the handwritten cancellation notation to the Connecticut Mutual application after Day signed it and that neither had ever discussed the notation with the other. The judge also found that Day "assumed" that Kerkorian would cancel the New York Life policy. Accordingly, the judge concluded, cancellation was Kerkorian's obligation and his failure to carry out that obligation meant that the second Connecticut Mutual policy was in full force and effect. Nevertheless, the judge concluded that nothing Kerkorian did or failed to do amounted to an unfair and deceptive practice prohibited by G. L. c. 93A. MassMutual appealed but settled with Day by agreeing to pay $3,600 per month in benefits under the second Connecticut Mutual policy.

Day filed the present action on February 2, 2001.[4] Insofar as Kerkorian is concerned, Day alleged that Kerkorian committed a violation of G. L. c. 93A and interfered with his contractual arrangement with Connecticut Mutual by falsely maintaining that he made the handwritten policy cancellation notation on the Connecticut Mutual application before Day signed it and by falsely maintaining that he had delivered the policy, containing a copy of

---

[3]At his deposition in this case, however, Day said that he and Kerkorian had not discussed responsibility for canceling the New York Life policy and that he had assumed Kerkorian would take care of it.

[4]At the time, MassMutual's appeal from the judgment in Day's favor was still pending.

the completed application, to Day before Day became disabled.[5] By way of damages, Day sought $400 per month for the rest of his life, which is the difference between the $4,000 face amount of the second Connecticut Mutual policy and the $3,600 he is receiving under that policy as a result of the settlement, multiple damages on that amount, interest on the aggregate difference thus far accrued, and attorney's fees in the vicinity of $585,000.

On that record, the Superior Court judge was right to enter summary judgment in favor of Kerkorian on the interference claim because that claim is subject to the three-year statute of limitations embodied in G. L. c. 260, § 2A, and that statute had run by the time Day filed his complaint. In so concluding, we review the record de novo. See *Matthews* v. *Ocean Spray Cranberries, Inc.*, 426 Mass. 122, 123 n.1 (1997); *Casavant* v. *Norwegian Cruise Line, Ltd.*, 63 Mass. App. Ct. 785, 792-793 (2005), cert. denied, 546 U.S. 1173 (2006).

Ordinarily, a statute of limitations begins to run when the plaintiff is harmed by the defendant's actions. *Joseph A. Fortin Constr., Inc.* v. *Massachusetts Hous. Fin. Agency*, 392 Mass. 440, 442 (1984). Here the injury, denial of Day's claim under the second Connecticut Mutual policy, occurred no later than the date when MassMutual filed its complaint for declaratory relief on April 17, 1997. Upon a straightforward application of the three-year statute of limitations, therefore, Day's January, 2001, complaint was filed too late.

Even if one were to credit Day's argument that the so-called "discovery rule" applies because MassMutual's complaint provided Day neither with knowledge nor with notice of harm inflicted through Kerkorian's conduct, see *Bowen* v. *Eli Lilly & Co.*, 408 Mass. 204, 205 (1990), the statute surely started to run by July 18, 1997, when Day filed his counterclaim. By then, he had the application with the handwritten notation he claimed was inserted after his signature, he knew that MassMutual was relying on that notation to deny his claim under the policy, and

---

[5]Earlier, another Superior Court Judge had dismissed Day's complaint on the ground of claim preclusion. Insofar as Kerkorian was concerned, we reversed that dismissal and remanded for further proceedings. *Day* v. *Kerkorian*, 61 Mass. App. Ct. 804 (2004). The rationale for our decision in the earlier appeal has no bearing on the issue we now decide.

his counterclaim characterized as false the assertions by Mass-Mutual and Kerkorian that Kerkorian had received no instructions to cancel the New York Life policy.

In sum, by the time Day filed his counterclaim, he had at least the kernel from which the present claim has grown. Possession of that kernel was sufficient to start the statute running. See *Lijoi* v. *Massachusetts Bay Transp. Authy.*, 28 Mass. App. Ct. 926, 928 (1990) ("Where injury is present but not discernible, or an injury is recognized but its cause is not ascertainable, accrual of the cause of action is held to be in abeyance until the time when a modicum of knowledge supplants ignorance in the mind of the claimant, or may be reasonably imputed to her"). The starting point does not require "discovery of every fact necessary to prevail on the claim, but rather . . . discovery of the plaintiff's injury as causally connected to [Kerkorian's alleged conduct]." *International Mobiles Corp.* v. *Corroon & Black/Fairfield & Ellis, Inc.*, 29 Mass. App. Ct. 215, 218 (1990). See *Williams* v. *Ely*, 423 Mass. 467, 473-475 (1996); *Szymanski* v. *Boston Mut. Life Ins. Co.*, 56 Mass. App. Ct. 367, 369 n.3 (2002). In appraising Day's knowledge or notice, the applicable standard is that of a reasonable person in his position, *Bowen* v. *Eli Lilly & Co.*, 408 Mass. at 210, and "[a]ccrual of a claim is not postponed due to '[u]ncertainty about the total extent of the damages.' " *Szymanski* v. *Boston Mut. Life Ins. Co.*, 56 Mass. App. Ct. at 369 n.3, quoting from *Swasey* v. *Barron*, 46 Mass. App. Ct. 127, 132 (1999).

Different considerations apply to the claim arising under G. L. c. 93A. There, the statute of limitations is four years, see G. L. c. 260, § 5A, and there is no contention of untimely filing insofar as the c. 93A claims are concerned. Instead, MassMutual claims that Day's claim was entirely based on Kerkorian's allegedly false statement that he had not added the handwritten notation to Day's application after Day signed it and that he had delivered to Day the second Connecticut Mutual policy with the completed application attached. That being the case, MassMutual urged, and the motion judge ruled, Day's claim was barred by a "litigation privilege" that attached to Kerkorian's statements, apparently because Kerkorian made those statements to attorneys and others who were acting on MassMutual's behalf in preparing a defense to Day's claim.

In the first place, however, it is doubtful that the so-called "litigation privilege" applies to this case at all, as it is essentially a defense to defamation claims available to those who make defamatory statements in their capacity as witnesses in judicial proceedings. See Restatement (Second) of Torts, § 588 (1977).[6] Indeed, in *Correllas* v. *Viveiros*, 410 Mass. 314 (1991), the case on which MassMutual most heavily relies, the Supreme Judicial Court framed the privilege in precisely those terms, i.e., "[i]t is well established that statements made by a witness or party during trial, if 'pertinent to the matter in hearing,' are protected with an absolute privilege against an action for defamation." *Id.* at 320. See also *Sax* v. *Sax*, 53 Mass. App. Ct. 765, 773 n.10 (2002).

Second, even if the privilege extends beyond defamation, the record does not clearly show when Kerkorian first made the relevant statements, the purpose for which they were made, or Kerkorian's expectation when he made them. Each of those uncertainties is important, as the court made clear in *Correllas* v. *Viveiros*, *supra*, when it explained the rationale for extending the privilege to some unsworn statements made outside the courtroom:

> "The facts clearly indicate that, when the defendant made her statements, a criminal investigation of the theft from the bank was well under way, and a prosecution was being contemplated. . . . In addition, it was obvious that the defendant would be either a witness or one of the accused in the criminal case. By implicating the plaintiff, the defendant knew that she would have to repeat her accusations at the plaintiff's trial, and do so under oath, subjecting herself to possible perjury charges for any false testimony. Affording the defendant an absolute privilege in these circumstances is justified because the final judgment in the criminal prosecution would necessarily be based on the defendant's testimony. That testimony, and the statements leading up to it, are part of a continuous transaction where disclosure should occur without fear of a civil action for defamation."

---

[6]The chapter of the Restatement in which § 588 appears is entitled "Defenses to Actions for Defamation." The chapter contains subchapters dealing, among other things, with absolute and conditional privileges. Section 588 is in the absolute privilege subchapter.

*Id.* at 324. Because the uncertainties are material, MassMutual has not carried its burden of eliminating all genuine issues of material fact surrounding application of what it claims is a broad "litigation privilege." See *Pederson* v. *Time, Inc.*, 404 Mass. 14, 16-17 (1989).

Finally, although the motion judge did not reach the issue, the present record does not support Kerkorian's claim that Day will be unable to prove any damages at trial. To be sure, one view of the record supports the proposition that, when all is said and done, Kerkorian promised to provide Day with insurance that would pay him $8,000 in monthly disability benefits and, through inadvertence or otherwise, actually provided him with a package of policies providing much greater benefits. On that view of the case, there may be no damages. That is not the view most favorable to Day, however, so Kerkorian must urge it upon a jury.[7,8]

Insofar as the judgment dismissed count one of the complaint alleging interference with an advantageous relationship, the judgment is affirmed. Insofar as the judgment dismissed count three of the complaint alleging a violation of G. L. c. 93A, the judgment is vacated, and the case is remanded to the Superior Court for further proceedings consistent with this opinion.

*So ordered.*

---

[7]Resolution of that issue may have an impact on Day's claim for attorney's fees arising out of his effort to enforce MassMutual's obligation under the second Connecticut Mutual policy. We leave that issue for initial assessment by the trial judge.

[8]Because the issue was not briefed, we offer no opinion on whether Day, having voluntarily settled with MassMutual for a monthly payment smaller than the payment to which his judgment entitled him, can now recover the difference from Kerkorian.