**Not for Publication in West's Federal Reporter**

# United States Court of Appeals
## For the First Circuit

No. 11-2213

GARY M. JONES and STEVEN S. HOWITT,

Plaintiffs, Appellants,

v.

VITO SCOTTI, individually and in his former capacity as Former
Chief of Police of the Town of Seekonk, Massachusetts, a/k/a John
Doe; CLAIMS INVESTIGATION SERVICES, INC., a Rhode Island business
corporation; COLEMAN WHOLEAN, a/k/a John Roe; FRANK JOHN,
individually and in his capacity as police officer of the Town of
Seekonk, Massachusetts; WAYNE L. MACKIEWICZ, individually and in
his capacity as Former Acting Chief of Police of the Town of
Seekonk, Massachusetts; CRAIG MACE, individually and in his
capacity as police officer of the Town of Seekonk, Massachusetts,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Leo T. Sorokin, U.S. Magistrate Judge]

Before

Boudin, Hawkisn,[*] and Dyk,[**] Circuit Judges.

Michael E. Levinson with whom John B. Reilly and John Reilly
& Associates were on brief for appellant.
Deidre Brennan Regan with whom Jeremy Silverfine was on  brief
for appellees Vito Scotti, Frank John and Craig Mace.

[*] Of the Ninth Circuit, sitting by designation.

[**] Of the Federal Circuit, sitting by designation.

        <u>Leonard H. Kesten</u> for appellees Claims Investigation Services,
Inc. and Coleman Wholean.

_____

September 26, 2012

_____

**HAWKINS**, <u>Circuit Judge</u>. Steven S. Howitt ("Howitt"), at all times relevant to the issues before us, a Selectman for the Town of Seekonk, Massachusetts, and Gary M. Jones ("Jones"), a Captain with its Police Department("SPD"), appeal the adverse grant of summary judgment on their First Amendment and defamation claims, stemming from two encounters between Howitt and private investigator Coleman Wholean ("Wholean") arguing that: (1) An Order from SPD Chief Vito Scotti ("Scotti")—that Jones not communicate with certain individuals during the course of an internal investigation—violated Jones's and Howitt's First Amendment rights; and (2) Wholean defamed Howitt in the course of reporting the encounters to law enforcement. We have jurisdiction pursuant to 28 U.S.C. §§ 1291 & 1294(1) and affirm.

## I. Background

Noticing Wholean sitting in a parked car in the vicinity of his business, Howitt approached him and initiated a conversation. Howitt walked back to his office and called Jones, asking him to "run" Wholean's license plate through a law enforcement database and provide him the results, and Jones did so. A few days later, Howitt spotted Wholean in the same place, approached him again, and initiated a conversation. During the conversation, it became clear to Wholean that Howitt had had his plates run. Later that day, feeling threatened from the incident, Wholean reported the matter to the SPD. The next day, Wholean went

-3-

to the police station to make a written, signed statement containing a more detailed account of the two encounters.

The report led Scotti to order an internal investigation and direct that while the investigation was pending Jones refrain from discussing with Howitt, other police officers, and former members of the Board of Selectmen ("Board") the investigation regarding his use of the license plate database at Howitt's behest. At the conclusion of the internal investigation, Scotti reported to the Board of Selectmen, recommending that Jones be suspended for fifteen days without pay and demoted.

After Scotti left the SPD, his successor reopened the investigation. This resulted in a revised recommendation that Jones receive a fifteen-day unpaid suspension, but not get demoted. The Board ultimately adopted a ten-day unpaid suspension, finding that Jones had violated numerous rules and regulations. Jones then claimed his right to arbitration pursuant to a collective bargaining agreement. The arbitrator rejected any suspension, determining that the violations cited by the Board were insufficiently supported by the record. The arbitrator did determine that Jones had exhibited a lack of judgment with respect to his response to Howitt's call, however, and for that, directed a written warning placed in Jones's employment file.

## II. Discussion

### A. First Amendment Claims

### 1. Matters of "Public Concern"

Jones and Howitt argue that the Scotti Order restrained Jones's ability to communicate to the public on a matter of "public concern": the SPD's alleged use of the internal investigation process as a "tool for harassment" against Jones.

But as Jones and Howitt themselves acknowledge, public employers may regulate public employees' speech. Indeed, as the district court correctly noted, the government acting as an employer "has far broader powers" than does the government acting as sovereign. Engquist v. Or. Dept. of Agr., 553 U.S. 591, 598 (2008) (quoting Waters v. Churchill, 511 U.S. 661, 671 (1994)). Because government offices simply could not function if every employment decision were subject to constitutional attack, "constitutional review of government employment decisions must rest on different principles than review of . . . restraints imposed by the government as sovereign." Engquist, 553 U.S. at 599 (quoting Waters, 511 U.S. at 674) (internal quotation marks omitted).

Thus, we analyze a claim that a public employee was deprived of First Amendment rights by his employer by seeking "a balance between the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public

services it performs." Enqquist, 553 U.S. at 599-600 (quoting Pickering v. Bd. of Ed. of Twp. High Sch. Dist., 391 U.S. 563, 568 (1968)) (internal quotation mark omitted). By contrast, "[i]f an employee speaks out only on a matter of personal interest . . . 'absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior.'" Guilloty Perez v. Pierluisi, 339 F.3d 43, 51 (1st Cir. 2003) (quoting Connick v. Myers, 461 U.S. 138, 147 (1983)).

Here, neither Jones nor Howitt present any evidence that Jones was restricted from speaking on a matter of "public concern." Rather, Jones's and Howitt's claim rests entirely on the alleged language of the Order. The record supports the district court's finding that "[t]he [O]rder . . . only precluded Jones from discussing the subject matter of the investigation. It was narrowly tailored to serve the legitimate interests of his employer in preserving the integrity of its investigation."

And, as Jones himself acknowledges, the Order was limited to the topic of the internal investigation, rather than barring all contact with the listed individuals. Though we view the evidence in the light most favorable to the nonmoving party, we certainly need not ignore the nonmoving party's own words, especially where

they are not contradicted in the record.[1]

Thus, Jones's and Howitt's "public concern" argument rests on their allegation that the investigation itself was the product of a "serious abuse of police power." But, they cite no evidence of any wrongdoing and rely on conclusory allegations.[2] As such there is nothing to substantiate their First Amendment claims

---

[1]On appeal, Jones disputes the district court's finding that the Order was limited to the subject matter of the investigation, averring that it was a total prohibition on speaking with the named individuals. As evidence, Jones cites to another document he submitted, his Declaration, in which he did not affirmatively state that the Order was comprehensive in scope, but simply did not specify the Order's substantive scope:

> [d]uring the 'investigation' described in the Complaint in this matter, [Jones] was instructed by Mr. Scotti not to speak with certain individuals, including Steven Howitt, David Vierra [] and Doreen Taylor []. [Scotti] also expressed concern as to whether [Jones] had contact with Francis Vendetti [].

As discussed below, on review of a grant of summary judgment, we will ignore "improbable inferences," from the record, even while construing the facts in the light most favorable to the nonmoving party. Sullivan v. City of Springfield, 561 F.3d 7, 14 (1st Cir. 2009). Thus, because the district court's determination that the Order was limited to the subject matter of the investigation was supported in the record by Jones's own documents, Jones's averment on this matter finds no valid basis in the record on appeal.

[2]A likely explanation for this plainly frivolous argument is that it remains in the plaintiffs' briefing from the trial phase, when they made "Abuse of Process" and "Malicious Prosecution" claims. However, as the SPD appellees point out, the district court entered summary judgment in favor of the defendants on these claims and the appellants do not appeal these claims.

and no need to conduct a <u>Pickering</u> balancing analysis.[3]

Further, the record supports an entirely plausible explanation for the Order as a rational way for the SPD to protect the integrity and confidentiality of the internal investigation—preventing Jones from crafting a joint narrative with Howitt and influencing potential witnesses during the internal affairs investigation. According to Chief Scotti, this sort of order was a standard operating procedure to bar police department officials from speaking to potential witnesses about the investigation itself during an ongoing internal investigation. The same rule applies to the employee being investigated as to the employees conducting the investigation.

Additionally, it would make sense that Jones would be barred from speaking with former members of the Board, the governmental body responsible for overseeing the investigation. With all of this information before it, the district court

---

[3]The appellants further argue that the Order should be analyzed under the higher level of scrutiny applied to "prior restraints" on speech, relying on <u>United States</u> v. <u>National Treasury Employees Union</u>, 513 U.S. 454, 468 (1995). We do not consider this argument for two reasons. First, appellants did not raise this argument in the district court, and second, a court's "prior restraint" analysis under <u>National Treasury Employees Union</u> is contingent on first finding the restriction to have pertained to a matter of public concern, for which, as discussed above, the appellants have not made any sort of substantive argument. As such, we deem the argument waived. <u>See</u> <u>Barrett ex rel. Estate of Barrett</u> v. <u>United States</u>, 462 F.3d 28, 40, n. 9 (1st Cir. 2006) ("Plaintiff cannot argue on appeal issues not raised below or developed only perfunctorily on appeal.").

correctly determined that the Order was not unlawful, and that it was an appropriate measure to "preserv[e] the integrity of the investigation."[4]

The district court's resolution of this claim is entirely correct; nothing about the Scotti Order was unlawful.

### 2. Qualified Immunity

Jones and Howitt next argue that the district court wrongly refrained from conducting an immunity analysis because it had wrongly resolved the First Amendment claims on the merits, in favor of the defendants. The court conducting a qualified immunity analysis determines "(1) whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right" and "(2) . . . whether the right was 'clearly established' at the time of the defendant's alleged violation." Maldonado v. Fontanes, 568 F.3d 263, 269 (1st Cir. 2009)(citing Pearson v. Callahan, 555 U.S. 223, 231-32 (2009)). Because it is clear that the district court correctly resolved these claims and that therefore Jones and Howitt did not satisfy the first prong, no qualified immunity analysis was necessary.

---

[4]Appellants also raise First Amendment claims on behalf of Howitt, but we need not consider these. The appellants make no substantive argument as to why the Order directed at Jones violated Howitt's First Amendment rights other than conclusory allegations that his rights were violated. Because no argumentation accompanies this bald statement, it is deemed waived. See King v. Town of Hanover, 116 F.3d 965, 970 (1st Cir. 1997).

**B. Howitt's Defamation Claim**

Howitt appeals the summary judgment grant as to his defamation claim against Claims Investigation Services, Inc. and Wholean, concerning a statement Wholean made to police while reporting to the police one of the interactions between himself and Howitt. The district court held the statement to be absolutely privileged because it was a statement made to law enforcement about a violation of criminal law, citing Correllas v. Viveiros, 410 Mass. 314, 321-23 (1991).

Howitt now contests the district court's application of absolute privilege to this statement, arguing that only a qualified (or "conditional") privilege should apply here because no criminal proceeding had begun, and this was an "unsolicited" report to the police.

The recollection Wholean gave to police about his second encounter with Howitt contained the following dialogue:

> **Howitt:** (angry tone) What are you doing here and why are you watching me?
> **Wholean:** It doesn't concern you.
> **Howitt:** I know who you are, you must be Coleman [sic]. Your car is registered to Claims Service.
> **Wholean:** Yes I am and I'm working in the area.
> **Howitt.** So why are you watching me? Why does it concern me?
> **Wholean:** It doesn't unless your [sic] cheating on your wife. (trying to lighten the mood)
> **Howitt:** I think your [sic] lying. If I find out your [sic] watching me or my family or any of my employee's [sic] you'll be in trouble. I know people in R.I. who can pay you a visit. I

know where you live in Saunderstown so you better not be lying to me, not that I'm threatening you.

**Wholean:** That sure sounded like a threat to me.

**Howitt:** You'd better not be lying. Why is Linda (my wife) the president of the company, so you can get federal bids?

**Wholean:** Yea basically. I'm just a business man trying to make a living.

**Wholean:** (I was thinking at this time this person was crazy. For him to obtain all my personal business and wife's information and retain it.)

**Howitt:** Me to [sic]. (Then Howitt walked away).

At issue is Wholean's telling police that Howitt said he "[knew] people in RI who could pay you a visit," in combination with a statement that he knew where Wholean lived. Howitt's version of this conversation is little different. He asserts that what he actually said was: "I know a lot of people in Rhode Island and I can get your license—I'll go after your license."[5]

We need not wade into the waters of whether an absolute or qualified privilege applies here because Howitt's defamation claim cannot survive summary judgment under even a qualified (or "conditional") privilege test.

As a general matter, to survive summary judgment on a typical defamation claim under Massachusetts law, a plaintiff must

---

[5]Howitt disputes the accuracy of additional statements Wholean made to the SPD, including Wholean's assertion that an encounter occurred and that his assertion that Howitt "block[ed] in" Wholean's vehicle, "rapped" on Wholean's window, acted "aggressively" or exhibited "anger" toward Wholean. The existence of these additional statements does not alter our analysis.

-11-

show that the defendant was at fault in making the statement. <u>See</u> <u>Ravnikar</u> v. <u>Bogojavlensky</u>, 438 Mass. 627, 630 (Mass. 2003). The threshold for this showing varies between negligence when the statement concerns a private person, and actual malice when the statement concerns public officials and public figures. <u>Id.</u>

Here, Howitt concedes that at least a qualified privilege applies under <u>Correllas</u>. In those contexts where a conditional privilege protects otherwise defamatory statements, the plaintiff must show that the defendant acted recklessly in making false statements. <u>Bratt</u> v. <u>Int'l Bus. Machines Corp.</u>, 467 N.E.2d 126, 131 (Mass. 1984). This requires more than showing negligence. <u>Id.</u> It can be shown if the plaintiff demonstrates that the defendant "(1) knew the information was false, (2) had no reason to believe it to be true, or (3) recklessly published the information unnecessarily, unreasonably, or excessively." <u>Dragonas</u> v. <u>Sch. Comm. of Melrose</u>, 64 Mass. App. Ct. 429, 438 (2005) (quoting <u>Sklar v. Beth Israel Deaconess Med. Ctr.</u>, 59 Mass. App. Ct. 550, 558 (2003)) (internal quotation mark omitted).

Here, even interpreting the facts in the light most favorable to Howitt,[6] and even assuming without holding that only

---

[6]Under summary judgment review standards, we view the evidence in the light most favorable to the nonmoving party. <u>Goldman</u> v. <u>First Nat'l Bank</u>, 985 F.2d 1113, 1116 (1st Cir. 1993). However, the court will ignore "conclusory allegations, improbable inferences, and unsupported speculation." <u>Sullivan</u>, 561 F.3d at 14 (quoting <u>Prescott v. Higgins</u>, 583 F.3d 32, 39 (1st Cir. 2008)) (internal quotation marks omitted).

a conditional privilege applies, Howitt cannot show that Wholean either knew or should have known the statement to be false, because Howitt's account of what he said is quite similar to Wholean's. As the district court noted:

> The statement Wholean reported is substantially similar to the statement which Howitt concedes that he made. In both versions, Howitt said that: he had friends in Rhode Island; that he knew where Wholean lived; and that, if Wholean were lying, Howitt would make trouble for Wholean . . . . In Howitt's version, he explained that the "trouble" was revocation of Wholean's private detective license, while in Wholean's version Howitt provided no further specification of the trouble.

Nor is there evidence of any wrongdoing on Wholean's part or that he did anything that would even remotely affect his detective license. In his opposition to Wholean's summary judgment motion, Howitt's primary ground for asserting a genuine issue of material fact on the question of recklessness was the alleged inaccuracy of Wholean's account. In that circumstance, the fact that Wholean reported a slightly different, but still threatening statement to the police would not support by itself a finding of recklessness. Even on summary judgment, the very minor discrepancies between Howitt's account of what he said and Wholean's account cannot support a finding that Wholean made a knowingly false statement or had no reason to believe it to be true.

Neither has Howitt met the burden for showing that Wholean unnecessarily, unreasonably, or excessively published the statement, such that he would lose a conditional privilege. Even Howitt's account of what he said included a serious threat to Wholean, making it eminently reasonable for Wholean to report the statement to the police. Finally, that Wholean gave police a formal, signed statement further shows that he was not acting frivolously or recklessly.

For the foregoing reasons, the judgment is **AFFIRMED**.